**ALEXANDER GRANT AND COMPANY, Appellant,**

v.

**TIFFANY INDUSTRIES, INC., Farrell Kahn and Gail Martin, Appellees.**

**No. 83–1608.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1984.

Decided Aug. 22, 1984.

Rehearings and Rehearings En Banc Denied Oct. 31, 1984.

Walter M. Clark, Catherine D. Perry, St. Louis, Mo., for appellant; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., Stanley Parzen, Mayer, Brown & Platt, Chicago, Ill., of counsel.

Kohn, Shands, Elbert, Gianoulakis & Giljum, Alan C. Kohn, Mark J. Bremer, Rob-

ert A. Useted, St. Louis, Mo., for Farrell Kahn.

Irl B. Baris, St. Louis, Mo., for Gail Martin.

Guilfoil, Petzall & Shoemake, Thomas J. Guilfoil, Jim J. Shoemake, St. Louis, Mo., for Tiffany Industries, Inc.

Before ROSS, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Alexander Grant and Company, a public accounting firm, appeals the dismissal of its complaint brought against its former client, Tiffany Industries, and certain Tiffany officials and employees under Title IX, the Racketeer Influenced and Corrupt Organizations (RICO) provision of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 941, codified at 18 U.S.C. §§ 1961–1968 (1982). The district court, 563 F.Supp. 35 (E.D.Mo.1982), relying on the Seventh Circuit's decision in *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), dismissed the complaint under Fed.R.Civ.P. 12(b)(6) on the ground that Grant lacked standing to sue under RICO's civil remedy provision. It also denied Grant's motion to file an amended complaint. Grant argues on appeal that the district court erred in dismissing its RICO claim and that it abused its discretion in denying Grant's motion to file the amended complaint. We reverse and remand for further proceedings.

Grant was retained by Tiffany from 1970 through May, 1978. In 1979, Grant filed an action under RICO's civil remedy provision, 18 U.S.C. § 1964(c), against Tiffany, its president Farrell Kahn, and Kahn's secretary Gail Martin. Grant claimed that it was the target of a pervasive scheme of mail and wire fraud designed by the defendants to obtain a favorable audit for the fiscal year 1977. Tiffany allegedly sought the favorable audit to obtain credit on better terms and to mislead its stockholders and the Securities & Exchange Commission into believing that the company was financially healthy.

For purposes of reviewing the district court's dismissal of Grant's complaint under Fed.R.Civ.P. 12(b)(6), we must accept as true all of Grant's material allegations and liberally construe the complaint in its favor. *Loge v. United States*, 662 F.2d 1268, 1270 (8th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). The first allegation is that Kahn, in an effort to inflate the value of Tiffany inventory, falsely represented to Grant that Steelabrade Corporation, a supplier of products to Tiffany, held $500,000 worth of Tiffany inventory as of March, 1978. Grant requested confirmation of this claim from Steelabrade president James Murphy. Kahn and Martin, knowing Murphy would not comply, instead requested that he compile a schedule of all purchases of Steelabrade products by Tiffany during 1977. The two then attached a copy of Grant's confirmation request to the schedule and fraudulently inserted language above Murphy's signature stating that "[t]his inventory was at our premises at December 31, 1977, and March 1, 1978." These documents were then mailed to Grant.

Grant's second claim of fraud concerns an alleged sale of $3,500,000 worth of Tiffany products to the government of Nigeria. Grant learned through the course of its audit that a substantial portion of the products sold had not yet been purchased by Tiffany. Grant questioned whether Tiffany could, under these circumstances, record in its financial statements the substantial earnings resulting from this sale. In response, Tiffany personnel stated that the sale should be certified because they had issued purchase orders for the products as of June 30, 1977, and that the products were held by ten suppliers who were simply awaiting further shipping instructions. Grant requested confirmation of this claim from the ten suppliers. Kahn and Martin backdated purchase orders and mailed to Grant forged letters from the suppliers confirming the representations made by Tiffany personnel. Grant, still apprehensive, sought "reconfirmation" of

the same information. Kahn and Martin then pressured six suppliers to sign and mail reconfirmation letters back to Grant.

Grant further asserts that Kahn and Martin typed two letters at Tiffany's St. Louis County offices allegedly from Nigerian bank officials. The two letters, one a forgery and the other "on information and belief" a forgery, represented that the two banks had extended $3,500,000 in loan commitments to the Nigerian government to enable it to purchase the Tiffany products. Grant also claims that Tiffany used false information to persuade four independent public accounting firms to certify the Nigerian sale, thereby pressuring Grant to do the same. These certifications were then mailed to Grant. By April 1978, Grant suspected that it was being defrauded and reported its concerns to the Securities & Exchange Commission as required by SEC regulations.

Grant concludes its complaint with the allegation that Tiffany's actions constitute a substantive RICO violation under 18 U.S.C. § 1962(c).[1] It asserts that mail fraud, 18 U.S.C. § 1341, and wire fraud, id. § 1343, are two of the acts included in the definition of "racketeering activity,"[2] that the defendants carried out two or more such acts within a ten-year period, thus establishing a "pattern of racketeering activity,"[3] and that Tiffany is an interstate "enterprise"[4] conducted by defendants through a pattern of racketeering activity. Grant further asserts that it is entitled to civil damages for this violation under 18 U.S.C. § 1964(c).[5]

The district court denied Grant's motion to file an amended complaint. The amended complaint names additional Tiffany officials as defendants and recites the foregoing with far greater specificity and clarity. It also incorporates additional claims of fraud; the original complaint includes 26 acts of mail fraud and 4 acts of wire fraud while the amended complaint reveals 48 and 10 instances, respectively. Included in the amended complaint are the following additional allegations: (1) Tiffany officials were negotiating with seven insurance companies for $9,000,000 in loans when it discovered in June, 1977 that, if generally accepted accounting principles were used, it was operating at a loss for the year; (2) Tiffany officials forged at least some of the "reconfirmation" letters from those suppliers who either refused or ignored Kahn's request that they assure Grant that they held Tiffany inventory bound for Nigeria; (3) Tiffany officials forged a third letter and a telex from officers of Nigerian banks that confirmed the $3,500,000 loan commitment to the Nigerian government; and (4) Tiffany officials further defrauded Grant by representing that Tiffany "farm stores" held inventory in excess of its actual value. The officials also pressured the managers of these stores to send false certifications to Grant and to make phony offers to purchase their inventories at inflated prices.

Grant asserts that it was damaged in three respects as a result of Tiffany's fraudulent representations. First, it claims

1. Section 1962(c) provides that

    [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

2. "Racketeering activity" is defined as, *inter alia,* "any act which is indictable under any of the following provisions of title 18, United States Code: * * * section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) * * *." 18 U.S.C. § 1961(1)(B).

3. A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity * * the last of which occurred within ten years * * after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

4. "Enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

5. 18 U.S.C. § 1964(c) provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of section 1962 * *."

that it suffered "theft of services," *i.e.*, the fraud required it to spend substantially more time on the Tiffany audit with a commensurate increase in fees, none of which have been paid. Second, it contends that the SEC investigation caused it to spend large amounts for attorneys' fees, document requests, and other expenses. Third, Grant argues that the fraud caused it to suffer damages to its business reputation.

## I. Standing

▉ The district court did not hold, nor does Tiffany argue, that Grant has failed to plead facts sufficiently alleging that Tiffany committed a substantive violation of RICO under section 1962(c).[6] Rather, the district court relied on *Cenco* and its holding that the accounting firm in that case suffered only "indirect" injury insufficient to grant it standing under section 1964(c).[7] Grant asserts that *Cenco* should not be adopted as the law of this circuit because its restrictive interpretation has no basis in the language or legislative history of RICO. It further argues that, in any event, this case is distinguishable from *Cenco* because Grant has been "directly"

injured by Tiffany's fraudulent practices. Tiffany argues that *Cenco* was properly decided and that Grant has suffered the same indirect injury alleged by the accounting firm in that case.[8]

We believe that *Cenco* is distinguishable from this case. In *Cenco*, the accounting firm of Seidman & Seidman was a co-defendant with Cenco, Inc., in a class action brought by persons who had purchased Cenco stock at allegedly inflated prices due to the company's fraudulent representations. The co-defendants cross-claimed against each other: Seidman argued that it too had been defrauded by Cenco and sought as damages under RICO indemnification for its liability to the shareholders. In this case, Grant seeks not indemnification but damages for the amount of its lost fees, the amount spent by reason of the SEC investigation, and the amount representing its loss of business reputation. We believe these are direct injuries, distinguishable from a claim for indemnification which, by its very nature, is secondary and indirect.

Second, and more compellingly, we are unpersuaded by the reasoning employed in

**6.** *See supra* note 1. We do observe that Grant's original complaint alleges that Tiffany is both a "person" and an "enterprise" within the meaning of section 1962(c). It was precisely because of the possibility of such an identity that we held that count II of the complaint in *Bennett v. Berg*, 685 F.2d 1053, 1061–62 (8th Cir.1982), *aff'd in part and rev'd in part*, 710 F.2d 1361 (8th Cir.1983) (en banc), *cert. denied*, — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983), failed to state a claim. Tiffany does not raise this point on appeal. We note, however, that Grant's amended complaint alleges that, in addition to Tiffany, two other distinct "enterprises" existed. The first consists of an association in fact of the six named individuals alleged in the amended complaint to have participated in the fraud. The second consists of all Tiffany employees.

**7.** *See supra* note 5. The term "indirect injury" discussed in *Cenco* has also been used as a synonym for the "commercial" or "competitive" injury requirement. *See, e.g., Schacht v. Brown*, 711 F.2d 1343, 1356–58 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983). It has been suggested that this requirement, borrowed from antitrust law, is applicable to RICO because the statute's legislative history reveals that it was "intended in part to

combat the threat posed by racketeer influences in the free market system." *Bennett*, 685 F.2d at 1059. We explicitly rejected in *Bennett* any "commercial" or "competitive" injury restriction on standing under RICO. *Id. See also* Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 58 Notre Dame L.Rev. 237, 255 n. 52 (1982).

**8.** Appellee Kahn argues separately that Grant's injury is insufficient because it was not a victim in the "target area" of the alleged RICO violation. He asserts that this concept, derived from standing tests developed under section 4 of the Clayton Act, 15 U.S.C. § 15 (1982), is applicable to RICO plaintiffs. Recognizing that we declined in *Bennett* an invitation to apply antitrust standing restrictions to RICO plaintiffs, *see supra* note 7, Kahn does not argue that Grant satisfies the target area test only if it suffers "commercial" or "competitive" injury. Rather, Kahn asserts that Grant must "loan Tiffany money, buy its stock or otherwise extend economic benefits to [it] * * *" to have standing. Appellee's Brief at 20. We believe that this reasoning is simply an alternative means of characterizing Grant's injury as "indirect," and therefore feel it merits no analysis independent of our discussion of *Cenco*.

*Cenco.* Judge Posner, writing for the panel, reasoned that the case was one of first impression and that the "language of section 1964(c) provides no answer * * * and there is no useful legislative history relating to the provision." *Cenco,* 686 F.2d at 457. The opinion thus focused on whether recognizing a cause of action in favor of Seidman would be consistent with the "compensatory and deterrent objectives of RICO" and would comport with its primary purpose of " 'cop[ing] with the infiltration of legitimate businesses.' " *Id.* (quoting *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981)). The court concluded that the objectives and purpose of RICO would not be served by permitting such actions, and also expressed concern with the volume of treble damage lawsuits an opposite decision might spawn.[9]

We cannot agree that Grant's standing under section 1964(c) is to be determined by means of an appeal to RICO's purpose and objectives. Section 1964(c) provides a civil remedy for "[a]ny person injured in his business or property by reason of a violation of section 1962 * * *." This language is unambiguous and, "in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' " *Russello v. United States,* — U.S. ——, ——, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting *Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527). We find no legislative history supporting the direct-indirect dichotomy; indeed, to the extent that the concept of indirect injury is a surrogate for concerns of federal-state relations and crowded court dockets, the legislative history indicates that Congress recognized that these were necessary costs in the fight against organized crime. *See* Blakey, *supra* note 7, at 280. It is simply "beyond our authority to restrict the reach of the statute" in this manner. *Bennett v. Berg,* 685 F.2d 1053, 1064 (8th Cir.1982), *aff'd in part and rev'd in part,* 710 F.2d 1361 (8th Cir.1983) (en banc), *cert. denied,* — U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *see generally Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 21 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Schacht v. Brown,* 711 F.2d 1343, 1361 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983).

We also observe that Judge Posner, in the post-*Cenco* decision of *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648 (7th Cir.1984), determined the scope of RICO with considerably greater deference to its plain language than he did in *Cenco.*[10] We believe that *Sutliff* robbed *Cenco* of much of the precedential value accorded it by the district court. Insofar as the approaches in the two cases differ, the task of reconciliation is left to the Seventh Circuit.

We conclude that Grant has suffered injury within the meaning of section 1964(c).

> Congress deliberately cast the net of liability wide, being more concerned to avoid opening loopholes through which the minions of organized crime might crawl to freedom than to avoid making garden-variety frauds actionable in federal treble-damage proceedings—the price of eliminating all possible loopholes. We must abide by Congress's decision, made at a time of less sensitivity than today to the workload pressures on the federal courts and to the desirability of maintaining a reasonable balance between state and federal courts, however much we may regret not only the burdens that the decision has cast on the federal courts but also the displacement of state tort law into the federal courts that it has brought about.

727 F.2d at 654 (citations omitted). *Sutliff* does not refer to the *Cenco* decision.

**9.** The particular language in *Cenco* is as follows: It is presumably on behalf of the owners, perhaps also the customers and competitors, of such businesses that the civil damages remedy was created, and not on behalf of the people who supply office equipment or financial or legal services to criminal enterprises that may be violating RICO. It is unlikely that Congress if it had adverted to the issue would have chosen to create in the wake of every RICO violation waves of treble-damage suits by all who may have suffered indirectly from the violation, especially when many of these would inevitably be, as here, the witting or unwitting tools of the violator.
686 F.2d at 457.

**10.** In *Sutliff,* Judge Posner made the following observation in the context of rejecting an organized crime connection for civil RICO recovery:

## II. Racketeering Enterprise Injury

■ Section 1964(c) provides that a civil remedy is available to persons suffering injury "by reason of a violation of section 1962 * * *." Yet section 1962(c) does not prohibit "racketeering activity;" rather, it makes it unlawful for a person to "conduct or participate * * * in the conduct of [an] enterprise's affairs through a pattern of racketeering activity * * *." Tiffany reasons that the language of these two sections combines to limit civil recovery to persons suffering a "racketeering enterprise injury"—*the conduct of an enterprise through* a pattern of racketeering— and does not create a cause of action for those suffering injury only from the underlying predicate acts. Tiffany asserts that Grant's injuries have resulted solely from the particular acts of mail and wire fraud outlined in the complaint.

We have characterized the attempt to limit the scope of RICO by seizing on the "by reason of" language contained in section 1964(c) as a "reiterat[ion] in new guise [of] the argument that no [distinct] 'enterprise' is alleged * * *." *Bennett*, 685 F.2d at 1059 n. 5. As advanced by Tiffany here, a racketeering enterprise injury also appears to bear some resemblance to the commercial or competitive injury concept and to the requirement that RICO is applicable to only those defendants associated with organized crime. We rejected both of these restrictions in *Bennett*. 685 F.2d at 1058–59, 1063–64. We recognize that a racketeering enterprise injury is a slippery concept whose definition has eluded even those courts professing to recognize it. *See In Re Catanella and E.F. Hutton and Co. Sec. Litigation*, 583 F.Supp. 1388, 1434–37 (E.D.Pa.1984) (collecting cases). "Underlying this [racketeering enterprise injury] requirement is the familiar judicial discomfort with the potential breadth of RICO's civil component." *Id.* at 1434.

We need not further consider the nature of a racketeering enterprise injury, how-ever, for it is clear that Grant's complaint does not simply allege injury from the underlying predicate acts. It contends that Tiffany was conducted through a pattern of mail and wire fraud that enabled it to remain in business. As a result of this extended life, Grant continued to provide its accounting services to Tiffany for a time greater than it would have had the fraud not occurred. This also increased the harm resulting to Grant's business reputation. We conclude that these allegations sufficiently plead an injury "by reason of" a RICO violation.

The Second Circuit recently held in *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), that the "by reason of" language in section 1964(c) requires that the injury result from mobster activity or the efforts of organized crime. As indicated previously, this requirement is contrary to our holding in *Bennett*.[11.] We do view our decision today as consistent with the Second Circuit's decision in *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984). Both require that civil RICO plaintiffs allege something more than injury from the underlying predicate acts. We recognize, however, that the Second Circuit in *Bankers Trust* defines that "something more" in a far narrower fashion. *Id.* at 517. *See also Furman v. Cirrito*, 741 F.2d 524 (2d Cir.1984) (criticizing the requirement of a racketeering enterprise injury imposed by *Sedima* and *Bankers Trust*).

Appellee Kahn asserts in the alternative that no "racketeering enterprise injury" exists because Tiffany never secured the favorable audit from Grant, and therefore its business operations were never enhanced, nor did it receive any financial advantage, from its racketeering activity. We are not persuaded by this argument. As concluded above, Grant's complaint sufficiently alleges that its injury resulted from the operation of Tiffany through a pattern of racketeering activity. Moreover, Kahn's argument would lead to the anomalous result

---

**11.** *Sedima* also holds that a prior criminal conviction is a prerequisite to civil RICO recovery.

This issue has not been raised in the district court in this case.

that the racketeering activity must be allowed to proceed to successful completion before civil recovery is permitted. No interpretation of the plain language of RICO's civil provisions supports the position that Grant must silently tolerate the significant costs and risks associated with ongoing fraud before it seeks redress.

### III. Amended Complaint

The district court did not articulate its reasons for refusing to allow Grant to file the amended complaint. Two factors convince us that the district court should on remand give serious consideration to Grant's motion. First, any additional allegations contained in the amended complaint would in all likelihood be permitted in evidence under the original complaint. Second, the amended complaint relates Grant's claim in a far clearer and more specific manner.

In summary, we conclude that Grant has sufficiently pled that it was "injured" by Tiffany's fraudulent practices and that its injury occurred "by reason of" Tiffany's alleged violation of section 1962(c).

Heaney, Circuit Judge, filed dissenting opinion.