**MICRO–MEDICAL INDUSTRIES, INC., Plaintiff,**

v.

**Robert HATTON, Industrial Care Corporation, Hospital Marketing Systems, Inc. and Hospital & Surgical Systems, Inc., Defendants.**

**Civ. No. 84–3055 (JP).**

United States District Court, D. Puerto Rico.

Feb. 19, 1985.

Roberto Boneta, Hato Rey, P.R., for plaintiff.

Frank Dalmau, Hato Rey, P.R., Harold D. Vicente, Santurce, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This case is before the Court on defendants' Motion to Dismiss for Lack of Jurisdiction filed January 3, 1985, together with the transcript of a hearing on jurisdiction held before this Court on January 4, 1985, defendants' Motion filed January 18, 1985, (Document No. 16) and Plaintiff's Opposition with attached Affidavit, filed January 18, 1985 (Document No. 16(a). Defendant's Reply to Plaintiff's Opposition (Document No. 18), filed January 30, 1985, is not before the consideration of the Court since a Reply was not requested by the Court. In its Order of January 4, 1985, the Court ordered the parties to file briefs simultaneously, after which the matter would stand submitted to this Court for decision.

Defendants have attacked plaintiff's first three causes of action under F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, and have moved to dismiss plaintiff's fourth cause of action under F.R.C.P. 12(b)(6) for failure to state a claim under the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.*

■ This Opinion and Order is entered pursuant to this Court's finding of diversity jurisdiction on January 30, 1985 and the denial of defendant's Motion to Dismiss on January 31, 1985. For purposes of evaluating defendant's factual attack on the existence of diversity jurisdiction, this Court is free to weigh the evidence and satisfy itself as to the existence in fact of subject matter jurisdiction; even so, the allegations of the complaint will be construed favorably to the plaintiff. 27 Fed.Proc., L.Ed. § 62:453 (T. Goger ed. 1984). However, with regard to the Court's evaluation of the Rule 12(b)(6) motion to dismiss the RICO claim, plaintiff's allegations must be taken as true. *Radovich v. National Football*

*League,* 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1956).

### 1. *Motion to Dismiss for Lack of Jurisdiction*

This is a case seeking damages and injunctive relief for alleged breach of contract, breach of warranty, and fraud in connection with plaintiff's purchase of certain assets from defendants under the terms and conditions of an Asset Purchase Agreement and Consulting Agreement, both executed September 19, 1984. The Asset Purchase Agreement was signed by plaintiff Micro-Medical Industries, Inc. through its then Vice-President, Ralph A. Sair, and by Robert Hatton, individually and as president of each of the defendant corporations, Industrial Care Corporation (ICC), Hospital Marketing Systems, Inc. (HMS) and Hospital and Surgical Systems, Inc. (HSS). The signatories to the Consulting Agreement were plaintiff Micro-Medical through its then Vice-President Ralph A. Sair, plaintiff's subsidiary, Micro-Scientific Corporation through its President Ralph A. Sair, and defendant Robert Hatton.

Diversity of citizenship between the named plaintiffs in this case is not in dispute. Plaintiff Micro-Medical claims to be a corporation incorporated in Delaware with its principal place of business in Illinois. Defendants, although initially raising the defense that Micro-Medical may have its principal place of business in Puerto Rico, have offered no evidence to contradict plaintiff's allegation, which is supported by the testimony and affidavits of Ralph Sair and accepted by the Court. Plaintiffs have also alleged that codefendants ICC, HMS and HSS are corporations organized and existing under the laws of the Commonwealth of Puerto Rico with principal places of business located within Puerto Rico, and that defendant Robert Hatton is a resident and citizen of Puerto Rico. Defendants have admitted that ICC, HMS and HSS are domestic corporations and, Robert Hatton has stated, by affidavit, that he was a resident of Puerto Rico.

The crux of defendant's jurisdictional attack lies in the assertion that plaintiff's Puerto Rican subsidiary, Micro-Scientific, is an indispensable party whose joinder to this action would destroy diversity and in whose absence this action should not proceed in equity and good conscience. F.R. C.P. 19(a) and 19(b). The identity and Puerto Rican citizenship of Micro-Scientific are not in dispute. The fact that Micro-Scientific is a wholly-owned subsidiary of the holding company Micro-Medical Industries, and a Delaware corporation with its principal place of business in Puerto Rico was confirmed by the testimony of Ralph Sair, President of Micro-Scientific. The issue before us is whether Micro-Scientific is an indispensable party and, if so, whether in equity and good conscience, this action should proceed among the parties before us nonetheless.

(a) *Whether Micro-Scientific should be joined to this action if feasible.*

Rule 19(a) of the Federal Rules of Civil Procedure provides a three-part test for determining whether the public and private interests in effective and efficient litigation require a person to be joined as a party if feasible. Under this test, Micro-Scientific must be joined if, in its absence, (1) complete relief cannot be accorded the present parties, (2) the disposition of the action would prejudice, as a practical matter, its ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations by reason of its absence. F.R. C.P. 19(a); *see Acton Co., Inc. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982).

█ We do not find that any of these factors mandate the joinder of Micro-Scientific to the present action. As the Sair affidavit and Exhibit 1 to plaintiff's Opposition reveal, Micro-Scientific had no role in negotiating the Asset Purchase Agreement. After the signing of the Letter of Intent by plaintiff's parent's parent, Griffith Laboratories, Inc. (Griffith) and defendant Hatton, Micro-Medical was formed, in part to proceed with the asset purchase

at issue. Micro-Medical alone signed the Asset Purchase Agreement and alone bears the purchaser's obligations detailed therein, including payment of the purchase price.[1] After being purchased from defendants, certain of the assets were then transferred from Micro-Medical to Micro-Scientific, as a contribution to capital. However, the rights given to Micro-Medical in the Asset Purchase Agreement are not shared by Micro-Scientific[2], as for example, the right to set off the purchase price with any idemnifiable damages, including those from a breach of the Consulting Agreement. On the other hand, in the Consulting Agreement, the rights to injunctive relief and damages for breach of the covenant not to compete contained in the Consulting Agreement, as well as other remedies not sought in this suit, are shared equally by the "Micro Companies" signatory to that agreement. From the foregoing, it appears that whatever rights of action Micro-Scientific may have as a signatory to the Consulting Agreement or even as a third party beneficiary to the Asset Purchase Agreement are shared by its parent Micro-Medical.

Being thus situated as parent and wholly owned subsidiary, members of a single enterprise engaged in a common business venture, it appears to us that the interests of the parent in this suit encompass those of the subsidiary. The close interrelationship between the subsidiary and its parent is evident. The subsidiary is wholly-owned by the parent. The president of the subsidiary is also president of the parent and one of three members of the parent's Board of Directors. From the close relationship between those closely-held companies and their shared interests in this cause of ac-

tion, we cannot see how, as a practical matter, the disposition of this action would prejudice the subsidiary's interest. Furthermore, any relief granted the parent would likewise benefit the subsidiary. *See Gadd v. Pearson,* 351 F.Supp. 895 (M.D. Fla.1972).

In addition, we can find no substantial risk of prejudice to defendant as a result of Micro-Scientific's absence. As a wholly-owned subsidiary of plaintiff, Micro-Scientific most likely would be bound by Micro-Medical's suit under the rule that res judicata applies not only to actual parties, but also to those in privity with the parties. *See Pan American Match Inc. v. Sears, Roebuck & Co.,* 454 F.2d 871 (1st Cir.), *cert. denied,* 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972). A finding of privity in a later suit would likely result from an evidentiary examination into the actual participation or control by Micro-Medical of the subsidiary's litigation. *See, e.g., International Telephone & Telegraph Corp. v. General Telephone & Electric Corp.,* 380 F.Supp. 976 (M.D.N.C.1974), *rev'd on other grounds per curiam,* 527 F.2d 1162 (4th Cir.1975). Furthermore, any claim brought by Micro-Scientific pursuant to the contract with the defendants would necessarily meet the second essential element of res judicata; namely, that the claim be identical or closely related.

The existence of closely-related claims, the parent's control of any subsequent suit, and the identity of interest between the parent and its subsidiary would all mandate a later finding that Micro-Scientific has had its day in Court through this present action.[3] *Cf. Acton Co. v. Bach-*

---

1. Griffith executed a limited guarantee on September 19, 1984 in form of the Sellers to guarantee the Minimum Installment Amount identified in Section 2.2(e) of the Asset Purchase Agreement. Exhibit 2 to plaintiff's Opposition.

2. It is true, as defendants agree, that Micro-Scientific may receive a right of action under the Asset Purchase Agreement as a third party beneficiary. Even if Micro-Scientific was qualified to sue under the contract by having met the conditions of acceptance and notice required by Article 1209 of the Civil Code, 31 L.P.R.A. 3374,

such a right serves only to make Micro-Scientific a real party in interest under F.R.C.P. 17(a). The Court must still determine that Micro-Scientific is an indispensable party under the standards of Rule 19(a) as set forth *supra.*

3. Even if Micro-Scientific would not be bound by res judicata, an adverse ruling in this action would certainly make a subsequent suit more difficult because of the likely applications of collateral estoppel. *See Allen v. McCurry,* 449 U.S. 90, 92, 94–96, 101 S.Ct. 411, 413, 414–416, 66 L.Ed.2d 308 (1980). For a discussion of

*man Foods, supra,* 668 F.2d at 78. We therefore find that Micro-Scientific is not a party to be joined under Rule 19(a).

(b) *Assuming Micro-Scientific should be joined, whether the action should proceed in equity and good conscience without Micro-Medical.*

Assuming, *arguendo,* that Micro-Scientific qualifies as a party to be joined under Rule 19(a), we note that there is no dispute among the parties that its joinder would not be feasible since it would destroy diversity. We find, nonetheless, that this action should proceed without the subsidiary under the considerations included in Rule 19(b).

Under Rule 19(b), the Court enjoys a substantial discretion to consider the facts and circumstances within the particular litigation before it; there is no prescribed formula to follow. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968). However, the Rule sets forth four factors to be included in the analysis:

"[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

In regard to the first factor, our view of the lack of prejudice to Micro-Scientific tracks our earlier discussion of the identity of interests and closeness of interrelationship between plaintiff and its subsidiary. The prejudice to defendants also appears insubstantial in light of our earlier analysis under the doctrine of res judicata. Secondly, any relief granted plaintiff would not only inure to the benefit of Micro-Scientific, but could also be conditioned upon appropriate provisions protecting defendants. *See McCormick & Co. v. Bedford Industries, Inc.,* 301 F.Supp. 29 (D.Md.1969). Furthermore, a judgment rendered in the absence of Micro-Scientific would likely prove binding on a later Court under the doctrines of issue and claim preclusion, thus avoiding piecemeal litigation, an interest which has been identified with the third factor. *Acton Co.,* 668 F.2d at 81. Finally, although dismissal of this action for nonjoinder does not preclude a subsequent suit in state court by Micro-Scientific, we note that the plaintiff here, as purchaser of the assets and signatory to the agreements, would likely be required to join with Micro-Scientific as plaintiff, thus creating the situation of a foreign-plaintiff sought to be avoided under the policy of our diversity jurisdiction statute. *Cf. Acton Co.,* 668 F.2d at 81 (adequate alternative forum exists in ongoing state action to which all interested parties had already been joined).

For all the foregoing reasons, the Court concludes that Micro-Scientific is not an indispensable party within the meaning of F.R.C.P. 19. Accordingly, this portion of defendant's Motion to Dismiss has been denied.

### 2. *Motion to Dismiss for Failure to State RICO Claim:*

Before addressing the specific issues raised by defendants in· their motion to dismiss the RICO count, we must first sketch the framework for analysis of a civil RICO claim. The analysis begins with 18 U.S.C. § 1964(c), which provides for a private right of action under RICO for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." In this case, plaintiff alleges violations of both 18 U.S.C. § 1962(a) and 18 U.S.C. § 1962(c), which provide in pertinent part:

"(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of

collateral estoppel in the context of corporate affiliation, see Philip Blumberg, The Law of Corporate Groups, at § 11.03 (1983).

racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.... (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity".

We next turn to § 1961, which provides definitions for key terms in § 1962 which defendants have placed at issue in the documents before the Court. The definition of "racketeering activity" in § 1961(1) includes mail and wire fraud under 18 U.S.C. § 1341 and 18 U.S.C.A. § 1343, respectively. 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity", as defined in § 1961(5), requires at least two acts of racketeering activity within a 10 year period. The individual acts of racketeering activity, which in this case are alleged to be mail and wire fraud, are referred to as "predicate acts."

(a) *Plaintiff's Allegations of Predicate Acts*

Defendants argue that plaintiff has failed to adequately allege the predicate acts as required by 18 U.S.C. § 1341 and § 1343, and by F.R.C.P. 9(b). Plaintiff bases its causes of action under RICO on an alleged scheme by defendants to defraud plaintiff by selling the assets of ICC at an inflated and unjustifiable price. The predicate acts alleged are two-fold: (1) use of the U.S. mails and interstate telephone lines between March 1982 and October 1982 by sending invoices charging customers of ICC with a higher quantity or quality of goods than was actually shipped, and by receiving payments for said invoices, all

of which resulted in a representation to plaintiff that ICC's cost of raw materials was lower, and ICC's profit higher, than they legitimately were; (2) telephone communications between defendant Hatton and Donald Alquire, officer of plaintiff, on July 26, 1984 and August 2, 1984, wherein defendant Hatton allegedly falsely represented that plaintiff must sign an asset purchase agreement or he would agree to sell the assets to a competitor who had offered to buy them.

 The two established elements of mail and wire fraud, as articulated by the First Circuit, are: "(1) a scheme conceived ... for the purpose of defrauding ... by means of false pretenses, representations or promises and (2) use of the United States mails [or interstate wire communications] in furtherance of that scheme." *United States v. Brien*, 617 F.2d 299 (1st Cir.1980) (citations omitted). Construing the complaint the most favorably to plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), we find that plaintiff's pleadings meet this standard.

Defendants further argue that plaintiffs have not plead the circumstances of fraud with the particularity required by F.R.C.P. 9(b). *See McGinty v. Beranger Volkswagen*, 633 F.2d 226, 228 (1st Cir.1980). (requiring specification of time, place, and content of alleged false representation, but not pleading of circumstances or evidence from which fraudulent intent inferred). The purpose of Rule 9(b) is to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants from spurious charges of fraudulent behavior. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp., et al*, 742 F.2d 786 (3d Cir., 1984). We note that this Rule must be read together with the modern rule of notice pleading, F.R.C.P. 8(a), which mandates short and plain statements sufficient to place the defendant on notice. In this case, we find plaintiff has met its burden of pleading under Rules 9(b) and 8(a) and has sufficiently specified the time, context and

nature of the alleged misrepresentations. Further information with regard to particular customers and shipments requires discovery. *See Eaby v. Richmond,* 561 F.Supp. 131, 137 (E.D.Pa.1983).

#### (b) *Plaintiff's allegation of a RICO Injury*

Defendants have raised several challenges to the actionability of plaintiff's claimed injury under RICO. The gravamen of defendants' argument appears to be that plaintiff's injury is outside the scope of § 1964(c) because it is not a "direct commercial injury" caused by reason of racketeering activity, but is rather injury caused by garden-variety fraud of a type not intended to be heard under RICO. In this regard, defendants argue that RICO was intended to combat the infiltration of legitimate business by organized crime and that plaintiff's RICO claim should be dismissed for failure to allege any connection between defendants and organized crime.

Section 1964(c) grants a private right of action to "[a]ny person injured in his business or property by reason of violation of section 1962 of this chapter". Exactly what sort of injury is required to meet this statutory language is presently the subject of much debate and confusion among the circuits. *Compare, e.g., Sedima, S.P.R.L., v. Imrex Co., Inc.,* 741 F.2d 482 (2d Cir. 1984) *with Haroco v. American National Bank & Trust Co. of Chicago, et al.,* 747 F.2d 384, (7th Cir.1984).

▄ After due consideration of the challenges raised by defendants, it appears to us that plaintiff has alleged an injury actionable under RICO in a manner sufficient to withstand a Motion to Dismiss. With regard to the requirement of "direct commercial injury" alleged by defendants, we find none. The term "direct injury" has been discussed in some civil RICO decisions, but the position in those cases has been that, to be actionable under RICO, an injury must be *indirect.* A few cases require competitive or commercial injury like that required under the antitrust laws prior to the finding that a plaintiff has standing.

*See, e.g., North Barrington Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill. 1980); *Van Schaick v. Church of Scientology,* 535 F.Supp. 1125, (D.Mass.1982). In other cases, the injury claimed by plaintiff must be something more than that resulting from the individual predicate acts alone. *See, e.g., Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.1984), *Harper v. New Japan Securities International, Inc.,* 545 F.Supp. 1002 (C.D.Cal.1982).

Because of the contradictory effects posed by defendant's articulation of a "direct commercial injury" requirement, we assess the terms individually. With regard to defendants' argument that plaintiff's injury must be "commercial," a term used synonymously with "competitive" for purposes of a RICO injury requirement, *Alexander Grant & Co. v. Tiffany Industries,* 742 F.2d 408, 411 n. 7 (8th Cir.1984), we find that the better view and the weight of judicial authority favors rejection of this argument. *See, e.g., Bennett v. Berg,* 685 F.2d 1053, 1055 (8th Cir.1982); *Haroco v. American National Bank, supra,* 747 F.2d 384; *Furman v. Cirrito,* 741 F.2d 524 (2d Cir.1984) (criticizing the antitrust analogy).

With regard to defendants' assertion that the injury alleged must be "direct," we note that a view restricting the application of RICO would require the opposite argument, i.e. that the injury must be indirect. In any event, plaintiff's claim of injury arising from an alleged pattern of fraudulent acts appears to satisfy the narrower view that the injury be different from that suffered directly as a result of the predicate acts, *e.g. Bankers Trust Co. v. Rhoades, supra,* 741 F.2d at 517 (but for the pattern of racketeering activity no injury would occur). *Cf. Haroco v. America National Bank, supra,* 747 F.2d at 398 (the criminal conduct in violation of section 1962 must, directly or indirectly have injured the plaintiff's business or property); *Alexander Grant v. Tiffany, supra,* 742 F.2d 408. Therefore, with regard to the issue of direct injury raised by defendants and without need to further define our

position on the matter, we conclude that defendant's allegation is without support in law.

Defendants also argue for dismissal of the RICO claim on the ground that plaintiff has failed to allege any connection between defendants and organized crime. This argument is based on the assumption that more than ordinary fraud is required to state a claim for treble damages under RICO. Such an argument has been advanced and, in some cases, accepted by the courts as a way of limiting the Draconian effect of a literal reading of RICO's broad provisions. *See, e.g., Aliberti v. E.F. Hutton & Co., Inc.,* 591 F.Supp. 632 (D.Mass. 1984). Supporters of this position look to the stated purpose of the statute, that of "eradication of organized crime in the U.S.", 116 Cong.Rec. 35191 (1970), to conclude that the courts must restrict the plain meaning of the statute. *E.g., Sedima v. Imrex, supra,* 741 F.2d 482.

Opponents agree as to the purpose of the statute, but assert that, in the absence of clearly expressed legislative intent limiting the statutory language, the judiciary is not free to restrict the statute's meaning. *See, e.g., Alexander Grant v. Tiffany, supra,* 742 F.2d 408; *Owl Construction Co., Inc. v. Ronald Adams Contractor, Inc.,* 727 F.2d 540, 542 (5th Cir.1984); *Haroco v. American National Bank, supra,* 747 F.2d 384. *See also United States v. Turkette,* 452 U.S. 576, 586–7, 101 S.Ct. 2524, 2530–1, 69 L.Ed.2d 246 (1981) (in absence of legislative restriction, RICO term "enterprise" applies to legitimate as well as illegitimate groups). Under this view, even if Congress had meant to allow for narrower judicial interpretations, "no legitimate principled criterion" exists for accomplishing that task. *Haroco v. American National Bank, supra,* 747 F.2d at 391, (citation omitted). As illustration, these proponents point to the various inconsistent standards of restriction advanced by other courts. *Id.,* at 398.

It has been noted, furthermore, that by defining racketeering activity in functional rather than status terms, Congress sought to avoid serious constitutional hazards. *Furman v. Cirrito,* 741 F.2d 524, 530 (2d Cir.1984). This deferential view accepts that Congress chose to enact the statute as written, with full knowledge of its sweeping effects as argued by the bill's opponents, *see, e.g.,* 116 Cong.Rec. 35204–05 (1970) (remarks of Rep. Mikva); it is not the role of the Courts to rewrite the statute's provisions. *See Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 21 (2d Cir.1983).

This Court agrees that, upon a Motion to Dismiss for failure to state a claim, it is not for us to rein in the deliberately broad swath of the brush chosen by Congress to blot out the activities of organized crime in the United States. As stated by the Supreme Court:

> "... Congress was well aware of the fear that RICO would 'mov[e] large substantive areas formerly totally within the police power of the State into the Federal realm.' ... Congress nonetheless proceeded to enact the measure ... There is no argument that Congress acted beyond its power in so doing. That being the case, the courts are without authority to restrict the application of the statute."

*United States v. Turkette, supra,* 452 U.S. at 586–87, 101 S.Ct. at 2530–31. For the foregoing reasons, this Court concludes that plaintiff's allegations of mail and wire fraud resulting in an inflated purchase price state a claim under RICO.

The Court having decided that joinder of plaintiff's subsidiary is not needed for just adjudication, and that the complaint sufficiently states a claim under the RICO Act, defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.