601 F.Supp. 257 (1984)
TERRE DU LAC ASSOCIATION, INC., Plaintiff,
v.
TERRE DU LAC, INC., et al., Defendants.
No. 83-2577C(3).
United States District Court, E.D. Missouri, E.D.
August 31, 1984.
*258 Robert H. Brownlee, Thompson & Mitchell, St. Louis, Mo., for plaintiff.
Donald L. James, St. Louis, Mo., William J. Garmisa, Mitchell S. Goldgehn, Nathan H. Lichtenstein, Greenberg, Keele, Lunn & Aronberg, Chicago, Ill., Joseph P. Conran, Maxine I. Lipeles, Dorothy White-Coleman, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., John W. Reid, II, Schnapp, Graham & Rein, Fredericktown, Mo., Richard S. Brownlee, III, Jefferson City, Mo., for defendants.

MEMORANDUM
HUNGATE, District Judge.
Numerous pretrial motions are pending in this action, including four motions to dismiss as to which the Court heard oral argument on August 9, 1984. The action is premised upon a sixteen-count complaint arising out of defendants' actions with regard to the sale of land in a particular subdivision.
Initially, and apart from the merits of the pending motions, the Court declines to exercise pendent jurisdiction over counts seven through fourteen. With the Court having, as it does, some 360 pending lawsuits, justice and the effective administration of courts are best served by permitting plaintiff's eight pendent counts to be dealt with in state court.[1] As noted by Congressman Neal Smith, Chairman of the House Appropriation Committee's Subcommittee on Commerce, Justice, State and Judiciary, in an interview published in The Third Branch, vol. 16, no. 8 (Aug. 1984), the judiciary can alter its own workload to some extent for the purpose of dealing with increasing caseloads. The courts may some day have to cease looking elsewhere for help and examine their own operations and rulings in situations where alternative remedies are available and are adequate to compensate for any injuries sustained.
The court cannot be governed by, but must not be oblivious to, the docket impact of its rulings. For example, district courts face an incipient epidemic of civil RICO treble damage cases. If the present litigation blizzard continues unabated, simply adding judges will not remedy the problems *259 of justice delayed being justice denied. Accordingly, plaintiff's state law claims will be dismissed without prejudice.
Defendants, in their four separate motions to dismiss plaintiff's amended complaint, urge dismissal of each of the remaining eight counts. Counts one through six are based on the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (Land Sales Act); count fifteen is based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; and count sixteen is based on the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. (Sherman Act).
Plaintiff association purports to sue both on its own behalf and for its members as purchasers in the Terre du Lac subdivision. Essentially, plaintiff's complaint seeks redress for injuries allegedly sustained as a result of unfulfilled promises as to numerous aspects of living in the subdivision. Specifically, plaintiff complains of unfinished roads, water and sewage systems, failure to transfer ownership of various amenities to the association, utility service charges, and use of the country club facilities.
As noted above, counts one through six allege violations of the Land Sales Act, which provides that "[a] purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title." § 1709(a). Clearly, the plaintiff association does not have standing to sue on its own behalf as to these counts, since it does not allege any purchase or lease from defendants. Plaintiff asserts, however, that it has associational standing to represent the claims of its members under these counts. Defendants vigorously contest this assertion.
In Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975), the Court found that an association could have representative standing, even without injury to itself, so long as any one member satisfies the requirement of justiciability and "so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensible to proper resolution of the cause...." The requirements for associational standing were further clarified in Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977):
Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
In Hunt, id., a Washington state agency sought to challenge the constitutionality of a North Carolina statute requiring that all apples sold or shipped into North Carolina in closed containers be identified by only the applicable federal grade or a designation that the apples were not graded. The Supreme Court held that the state agency did have associational standing, noting that "neither the interstate commerce claim nor the request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context." Id. at 344, 97 S.Ct. at 2442.
Assuming, arguendo, that plaintiff fulfills the first two Hunt requirements for associational standing, the Court finds that plaintiff fails to satisfy the third requirement that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Counts one, two, four, and the portions of count six which incorporate the first three counts, are based on defendants' alleged fraudulent representations and course of business as to plaintiff's members. That being the case, it is clear that each injured party must participate in the lawsuit in order to divulge the extent of the misrepresentation to which the purchaser was exposed.
Plaintiff argues that it can establish the existence and breach of promises *260 without the need of each individual member, Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint at 14, and that so long as this is established as to a sufficient number of members to justify specific performance, there is no need for individual participation. However, the Court does not agree with plaintiff's apparent contention that the third Hunt requirement precludes associational standing only when the nature of the relief sought requires individual participation by each member. Rather, both the relief and the claim must be able to proceed without participation of individual members. Although plaintiff's associational requests for relief do not require such participation, their claims of fraud, upon which the requests for relief are predicated, must each be supported with testimony as to particular fraudulent misrepresentations. This, in turn, requires individual participation by individual members alleging injury. See, i.e., Harris v. McRae, 448 U.S. 297, 321, 100 S.Ct. 2671, 2690, 65 L.Ed.2d 784 (1980) (women's group lacked standing to raise free exercise challenge to Hyde Amendment, since free exercise case necessitates showing of coercive effect of enactment as it operates against individual in practice of religion).
This reasoning does not apply to count three or to the portion of count six which charges aiding and abetting as to count three. Count three alleges injury resulting from the issuance of false property reports. To establish defendants' liability for false property reports under the Land Sales Act, "a plaintiff is not required to prove that each purchaser relied in some way on the omission or misrepresentation but only that a material misrepresentation or omission existed in the statement of record at the time the property was sold." Bryan v. Amrep Corp., 429 F.Supp. 313, 317 (S.D.N.Y.1977). Neither the nature of the claim asserted nor the relief requested requires individual participation.
Nonetheless, the Court finds that plaintiff also lacks standing as to these claims under the reasoning set forth in Associated General Contractors of North Dakota v. Otter Tail Power Co., 611 F.2d 684 (8th Cir.1979).[2] In that case, a nonprofit association, with both union and nonunion general contractors as members, alleged that an agreement between defendant corporations and numerous labor unions violated antitrust and state labor laws. The Eighth Circuit held that "[t]he association is clearly not in a position to speak for its members.... Their status and interests are too diverse and the possibilities of conflict too obvious to make the association an appropriate vehicle to litigate the claims of its members." Id. at 691. The Court stated in support:
Some members are not qualified and others are not willing to work on the project; some stand to benefit from working on the project under the Agreement and still others will be hurt by not being able to do so.
Id. Significantly, the Court's finding of potential conflict was made despite the fact that the association had voted unanimously to bring the lawsuit, observing that it is the Court's responsibility to determine whether members' interests required individual representation. Id.
Here, the Court need not search extensively in order to find potential conflict. Some members, as argued by defendants, may believe that the value of their property is diminished by the very fact of this lawsuit, or may find that it is not in their best interests to have their mandatory dues expended in this fashion. One defendant is also a board member of the plaintiff association.
As noted in Minnesota Public Interest Research Group v. Selective Service System, 557 F.Supp. 925, 935 (D.Minn.1983), the Eighth Circuit "appears fairly ready to find that a diversity of view necessitates individualized participation, preventing representational standing." In light of the Eighth Circuit's holding, the Court must reject plaintiff's argument for the more *261 liberal approach taken by the Tenth Circuit in National Collegiate Athletic Association v. Califano, 622 F.2d 1382 (10th Cir. 1980). Accordingly, all of plaintiff's claims under the Land Sales Act must be dismissed without prejudice to the right of any individual members to seek relief on their own behalf.
Plaintiff's lack of associational standing, as set forth above in regard to its members' claims under the Land Sales Act, also mandates dismissal of its members' claims in counts fifteen and sixteen. In these latter two counts, however, under RICO and the Sherman Act, plaintiff has asserted standing on its own behalf in addition to alleging associational standing. The Court, therefore, addresses plaintiff's claims under these counts separately.
As to plaintiff's RICO count, the Court will sustain defendants' motions to dismiss for the reason that none of the named defendants have been criminally convicted of any of the predicate acts listed in RICO.[3] The "pattern of racketeering activity" alleged by plaintiff consists of mail fraud, in that defendants are charged with mailing false property reports, and false representations to potential purchasers, and receiving checks from purchasers through the mail. However, as conceded orally by counsel for plaintiff, none of these defendants have been convicted of any of the alleged predicate acts of mail fraud.
In a recent and well-reasoned decision, the Second Circuit has determined that criminal conviction of a predicate act must precede a private civil suit under RICO. Sedima, S.P.R.L. v. Imrex Co., 741 F.2d 482 (2d Cir.1984). In Sedima, the distinguished Second Circuit examined the statute itself, its legislative history, and previous case law; all of which, it concluded, suggest the necessity of restricting the availability of RICO's civil penalties to those persons whose potential defendant(s) have been found criminally guilty of committing a predicate act. Otherwise, RICO would "permit defendants in every `gardenvariety' fraud or securities violation case to be stigmatized as `racketeers,' on the basis of a preponderance of the evidence...." Id., at 503.
To find otherwise would also allow treble damages to be awarded on only a preponderance of the evidence, and would further have a severe effect on the court's dockets.
The Court also finds plaintiff's antitrust claim on its own behalf to be without merit. In count sixteen, plaintiff alleges that defendants are violating antitrust law by way of an illegal tie-in arrangement between golf memberships in the Terre du Lac Golf and Country Club and lots offered for sale by defendants in the subdivision. Plaintiff complains of defendants' practice of waiving the membership initiation fee for persons whose lot is purchased from defendants, whereas those persons who purchase lots from anyone else and desire to obtain a golf membership must pay a substantial initiation fee. Plaintiff alleges that this practice precludes sellers from obtaining the fair market value of their lots.
In arguing the merits of defendants' motions to dismiss, all parties rely on the recently decided case of Jefferson Parish Hospital District No. 2 v. Hyde, ___ U.S. ___, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). As noted therein, "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." Id. at 1558.
The Court agrees with defendants that no such tying is alleged by plaintiff's complaint, and that plaintiff has failed to state *262 a claim for which relief could be granted under the antitrust laws. Purchasers are not required to buy golf club memberships in order to buy land in the subdivision, nor are they required to buy land from the defendants in order to purchase golf club memberships. Accordingly, the Court finds that count sixteen must be dismissed.
Also pending in this action is a motion to intervene as defendant by the Missouri Public Service Commission and a motion to vacate the Court's August 9, 1984, protective order. Because this order dismisses plaintiff's complaint in its entirety, those motions are moot.

ORDER
A memorandum dated this day is hereby incorporated into and made a part of this order.
IT IS HEREBY ORDERED that the Court declines to exercise pendent jurisdiction as to Counts VII through XIV, and those counts are dismissed without prejudice.
IT IS HEREBY FURTHER ORDERED that the motion to dismiss filed by defendants Terre du Lac, Inc., and James O. Kwon be and the same is granted.
IT IS HEREBY FURTHER ORDERED that the motion to dismiss filed by defendant CIT Corporation be and the same is granted.
IT IS HEREBY FURTHER ORDERED that the motion to dismiss filed by defendants Terre du Lac Golf and Country Club, Inc., Terre du Lac Country Club Associates, Sensibar Enterprises, Inc., and Moill, Ltd., be and the same is granted.
IT IS HEREBY FURTHER ORDERED that the motion to intervene filed by the Missouri Public Service Commission be and the same is denied as moot.
IT IS HEREBY FURTHER ORDERED that the motion to vacate the protective order entered August 9, 1984, be and the same is denied as moot.
NOTES
[1] Anyone who disagrees with this proposition should attempt the formulation of suitable, comprehensible jury instructions for a case with nine parties, eight federal counts, and eight state counts.
[2] This reasoning is equally applicable to the Land Sales Act counts disposed of supra.
[3] The determination whether a prior criminal conviction is a prerequisite to a civil RICO recovery was left open in the recent case of Alexander Grant and Company v. Tiffany Industries, Inc., 742 F.2d 408 (8th Cir.1984).