772 F.2d 467
 1985-2 Trade Cases 66,766
 TERRE DU LAC ASSOCIATION, INC., a not-for-profit
corporation, Appellant,
v.
TERRE DU LAC, INC., Terre Du Lac Utilities Corp., Terre Du
Lac Golf and Country Club, Inc., Terre Du Lac Country Club
Association, a limited partnership, CIT Corporation,
Sensibar Enterprises, Inc., Moill, Ltd. and James O. Kwon, Appellees.
 No. 84-2296.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1985.
Decided Sept. 9, 1985.
Rehearing and Rehearing En Banc Denied Oct. 14, 1985.
 
 Kenton E. Knickmeyer, St. Louis, Mo., for appellant.
 John W. Reid, Fredericktown, Mo., and Mark Arnold, St. Louis, Mo., for appellee.
 Before ROSS and JOHN R. GIBSON, Circuit Judges, and COLLINSON,* District Judge.
 ROSS, Circuit Judge.
 
 
 1
 This case involves an action filed by Terre Du Lac Association, Inc. (Association), a property owners' association, against Terre Du Lac, Inc. and other alleged developers of the Terre Du Lac Subdivision. The Terre Du Lac Subdivision is a private recreational land development area located in southeastern Missouri.
 
 
 2
 The Association's complaint included sixteen counts. Counts one through six were based on the Interstate Land Sales Full Disclosure Act (Land Sales Act), 15 U.S.C. Secs. 1701-1720; counts seven through fourteen were based on pendent state law claims; count fifteen was based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-1968; and count sixteen was based on the Sherman Antitrust Act, 15 U.S.C. Secs. 1-7. Prior to trial, the defendants filed motions to dismiss all counts of the complaint. The district court granted the motions and the Association now appeals. We affirm the dismissal of the Land Sales Act counts, reverse the dismissal of the RICO and antitrust counts, and vacate the dismissal of the pendent state law counts.
 
 DISCUSSION
 1. Land Sales Act--Associational Standing
 
 3
 Counts one through six of the Association's complaint alleged that the defendants violated the Land Sales Act by failing to fulfill the following promises and representations: 1) that the roads in the development would be paved with asphalt, 2) that the sewage disposal and water systems would be completed, 3) that all members of the Association could use certain amenities in the subdivision for free (e.g., golf courses and club house), and 4) that these amenities would be conveyed to the Association upon completion. In particular, count one alleged a violation of 15 U.S.C. Sec. 1703(a)(2)(A), count two alleged a violation of 15 U.S.C. Sec. 1703(a)(2)(B),[1] count three alleged a violation of 15 U.S.C. Sec. 1703(a)(1)(C),[2] count four alleged a violation of 15 U.S.C. Sec. 1703(a)(2)(C), count five alleged a violation of 15 U.S.C. Sec. 1703(a)(2)(D), and count six alleged that defendant CIT Corporation aided and abetted the other developers in each of these violations. These statutory sections provide that:
 
 
 4
 (a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails--
 
 
 5
 (1) with respect to the sale or lease of any lot not exempt under section 1702 of this title--
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 (C) to sell or lease any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein pursuant to sections 1704 through 1707 of this title or any regulations thereunder; or
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 (2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title--
 
 
 12
 (A) to employ any device, scheme, or artifice to defraud;
 
 
 13
 (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information perintent to the lot or subdivision;
 
 
 14
 (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser; or
 
 
 15
 (D) to represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.
 
 
 16
 15 U.S.C. Secs. 1703(a)(1)(C), (2)(A)-(D). As relief for the defendants' violation of these provisions, the Association sought specific performance of the unfulfilled representations, plus other appropriate relief. The Land Sales Act provision authorizing such relief provides as follows:
 
 
 17
 (a) A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title. In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable. In determining such relief the court may take into account, but not be limited to, the following factors: the contract price of the lot or leasehold; the amount the purchaser or lessee actually paid; the cost of any improvements to the lot; the fair market value of the lot or leasehold at the time relief is determined; and the fair market value of the lot or leasehold at the time such lot was purchased or leased.
 
 
 18
 15 U.S.C. Sec. 1709(a) (emphasis added). See also 15 U.S.C. Sec. 1709(c) (authorizes recovery for interest, court costs, attorneys' fees, appraisers' fees, and travel expenses).
 
 
 19
 The district court dismissed the Land Sales Act counts on the basis that the Association lacked standing. Initially, the court determined that the Association lacked standing to sue on its own behalf since the Association did not allege that the Terre Du Lac Subdivision lots which it owns were purchased from the defendants. The Association does not contest this finding on appeal.
 
 
 20
 The Association does, however, contest the district court's finding that it lacked associational standing to sue on behalf of its members as to the Land Sales Act counts. According to the Association's complaint, every owner of a lot in the Terre Du Lac Subdivision is required to become a member of the Association and, at the time the complaint was filed in this case, there were approximately 4,000 lot owners. Approximately 3,400 of these lot owners are alleged to have purchased their lots from the defendant developers from between sometime before 1969 to the date the complaint was filed. The Association seeks to assert the Land Sales Act claims on behalf of these 3,400 members.
 
 The Supreme Court has
 
 21
 recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 22
 Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Each of these three requirements for associational standing must be met. Associated General Contractors v. Otter Tail Power Co., 611 F.2d 684, 690 (8th Cir.1979).
 
 
 23
 In this case, the district court found that the Association "fail[ed] to satisfy the third requirement that 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " Terre Du Lac Association, Inc. v. Terre Du Lac, Inc., 601 F.Supp. 257, 259 (E.D.Mo.1984) (quoting Hunt v. Washington Apple Advertising Commission, supra, 432 U.S. at 343, 97 S.Ct. at 2441). The court based this conclusion on the facts that: 1) some of the Land Sales Act counts required proof of reliance, which proof would necessitate testimony by individual members and, 2) there was "potential conflict" amongst the members relating to the suit necessitating individual representation of their interests. Id. at 259-61.
 
 
 24
 We agree with the district court's holding that the Association lacks associational standing to assert the Land Sales Act counts, but do not adopt the district court's reasoning. In our view, the Association lacks associational standing due to the fact that the type of relief available under the Land Sales Act, 15 U.S.C. Sec. 1709(a), requires individualized proof of the claims asserted.
 
 
 25
 Section 1709(a) provides authority for both damages and specific performance remedies. A damages remedy for a Land Sales Act violation would clearly require individualized proof necessitating the individual participation of the Association members. See Associated General Contractors v. Otter Tail Power Co., supra, 611 F.2d at 689-90 (associational standing is traditionally denied in section 4 antitrust actions, which seek treble damages awards, due to the need for "precise knowledge of the * * * injury to each plaintiff", whereas in section 16 antitrust actions, which seek injunctive relief, associational standing is not denied unless the association is an inappropriate representative for some reason). First, in order to establish a right to relief, the Association would have to submit evidence relating to each purchase of a subdivision lot in order to establish that the purchaser had a viable Land Sales Act claim. Second, in order to establish the amount of relief due, the Association would have to submit evidence relating to the cost and current value of each lot, as well as evidence relating to the amount by which the defendants' Land Sales Act violations diminished this value. Clearly, the need for such individualized proof renders the Association an inappropriate vehicle to bring the Land Sales Act claims of its members.
 
 
 26
 The Association seeks to avoid the fact that the damage relief available under section 1709(a) cuts against granting associational standing by arguing that specific performance, not damages, is the relief the Association really wants. A right to a specific performance remedy could be established, the Association argues, by mere proof that the defendants made the alleged promises and representations in violation of the Land Sales Act to one or more of its members. Further, the Association argues, no member would have to testify in court since much of the necessary proof could be established with written evidence such as property reports and written advertisements.
 
 
 27
 We reject the Association's arguments. In order to determine whether a specific performance remedy is appropriate, the court would have to receive substantial evidence relating to the individual claims and damages of members of the Association in order for it to determine whether specific performance, as opposed to a damages remedy, would be "fair, just, and equitable." 15 U.S.C. Sec. 1709(a). Further, the fact that much of the proof could be submitted by written rather than testimonial evidence does not help the Association's cause. The Association's argument boils down to the proposition that the rule against granting associational standing where the "participation of individual members" is required in the lawsuit, Hunt v. Washington Apple Advertising Commission, supra, 432 U.S. at 343, 97 S.Ct. at 2441, refers solely to participation in the form of in-court testimony. Such a narrow reading of Hunt is unfounded. Associational standing is properly denied where, as here, the need for "individualized proof", id. at 344, 97 S.Ct. at 2442 so pervades the claims asserted that the furtherance of the members' interests requires individual representation.
 
 
 28
 2. RICO--Conviction Requirement and Standing
 
 
 29
 Like counts one through six, count fifteen of the Association's complaint sought a remedy for the defendants' failure to fulfill their alleged promises and representations relating to the paving of roads, the completion of the sewage and water systems, and the use and transfer of subdivision amenities. Count fifteen, however, sought relief under the RICO Act. The count alleged violations of sections 1962(a) and (c) of the Act, based on predicate acts of mail fraud, see 18 U.S.C. Secs. 1341, 1961(1)(B), and sought equitable relief pursuant to section 1964(a) of the Act.
 
 
 30
 The district court dismissed the RICO count on the basis that "none of these defendants have been convicted of any of the alleged predicate acts of mail fraud." Terre Du Lac Association, Inc. v. Terre Du Lac, Inc., supra, 601 F.Supp. at 261. The court relied solely on Sedima, S.P.R.L. v. Imrex Co., 741 F.2d 482 (2d Cir.1984), wherein the court determined that a criminal conviction of a predicate act must precede a private civil suit under RICO.
 
 
 31
 Subsequent to the district court's decision in this case, the Supreme Court reversed the Second Circuit's decision in Sedima. The Supreme Court held that a RICO action may proceed without a criminal conviction of a predicate act. Sedima, S.P.R.L. v. Imrex Co., --- U.S. ----, ----, 105 S.Ct. 3275, 3281-84, 87 L.Ed.2d 346 (1985).
 
 
 32
 In view of the Supreme Court's decision in Sedima, the failure of the Association's complaint to allege prior mail fraud convictions of the defendants does not render the complaint deficient. Thus, a reversal of the district court's dismissal of the RICO count is required, unless some other fatal defect in the complaint exists.
 
 
 33
 The defendants argue that such a defect exists in that the complaint fails to allege sufficient facts supporting the Association's standing to pursue the RICO count. On appeal, the Association does not contest the district court's finding that it lacks associational standing to pursue the RICO count on behalf of its members. Instead, the Association argues that it may maintain the RICO action on its own behalf because the Association itself was injured by the defendants' acts of mail fraud.
 
 
 34
 The Association alleged in its complaint that the defendants' acts of mail fraud injured the Association by causing the cost of maintaining the roads in the Terre Du Lac Subdivision, which roads the Association is legally obligated to maintain, to increase. The cost allegedly increased because: 1) the defendants invested the money which they obtained from the mail fraud (i.e., proceeds from the sale of lots in the subdivision) in their own operations rather than using the money to improve (i.e., pave with asphalt) the subdivision roads, and 2) the mail fraud scheme caused more lots to be sold, resulting in more roads and greater usage of the roads which are required to be maintained.
 
 
 35
 The defendants argue that these allegations of injury are not sufficient to establish the Association's standing since the Association does not allege that it was the target of the alleged mail fraud and since the alleged injury is only indirectly related to the mail fraud. The defendants also argue that the alleged injury is in reality nothing more than injury to the Association's members since the Association will pay for the increased costs of road maintenance by merely allocating a larger share of the members' association dues to cover such costs.
 
 
 36
 This court has previously held that standing to pursue a RICO action exists even though the plaintiff does not allege that it was a target of the racketeering activity and even though the plaintiff only alleges that it suffered indirect injury. Alexander Grant & Co. v. Tiffany Industries, Inc., 742 F.2d 408, 411 nn. 7 & 8 (8th Cir.1984), vacated and remanded for further consideration in light of Sedima, --- U.S. ----, 105 S.Ct. 3551, 87 L.Ed.2d 673 (1985). Our decision in Alexander Grant in this respect is consistent with the Supreme Court's decision in Sedima, wherein the Court stated:
 
 
 37
 the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." Haroco, Inc. v. American National Bank & Trust Co. of Chicago, 747 F.2d 384, 398 (1984), aff'd, --- U.S. ----, 105 S.Ct. 3291, 87 L.Ed.2d 437.
 
 
 38
 But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in Sec. 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of Sec. 1962(c) will flow from the commission of the predicate acts.
 
 
 39
 Sedima, S.P.R.L. v. Imrex Co., supra, --- U.S. at ----, 105 S.Ct. at 3285-86 (emphasis added, footnote omitted).[3] Further, we find no support for the defendants' argument that the Association lacks standing merely because it may pass its alleged injuries on to its members. Thus, we hold that the Association's complaint alleges sufficient injury to support its standing to pursue its RICO action.
 
 3. Antitrust--Tying
 
 40
 Count sixteen of the Association's complaint alleged that the defendants are engaging in unlawful tying in violation of the antitrust laws. This count challenges the defendants' practice of requiring lot owners to pay a $3,000 initiation fee to join the Terre Du Lac Golf and Country Club if they purchased their lot from someone other than the defendants, while offering free memberships to the club to persons who purchase lots from the defendants. The Association sought an injunction against this practice. See 15 U.S.C. Sec. 26.
 
 
 41
 "A tying arrangement is defined as the sale or lease of one item (the tying product) on the condition that the buyer or lessee purchase a second item (the tied product) from the same source." Rosebrough Monument Co. v. Memorial Park Cemetery Association, 666 F.2d 1130, 1140 (8th Cir.1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982). The Supreme Court recently explained that
 
 
 42
 the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such "forcing" is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated.
 
 
 43
 Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2, ----, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984) (emphasis added).
 
 
 44
 Here, the Association argues that the "tying" product is the club memberships, while the "tied" product is the subdivision lots. The Association claims that prospective purchasers will buy lots from the defendants, as opposed to other lot owners, because only the defendants can offer free club memberships.[4] Thus, the Association asserts, the defendants are given an unfair and unlawful competitive advantage in selling lots in the subdivision.
 
 
 45
 The district court concluded that the Association's complaint "failed to state a claim for which relief could be granted under the antitrust laws" because "[p]urchasers are not required to buy golf club memberships in order to buy land in the subdivision, nor are they required to buy land from the defendants in order to purchase golf club memberships." Terre Du Lac Association, Inc. v. Terre Du Lac, Inc., supra, 601 F.Supp. at 261-62 (emphasis added). The Association argues that the court erred in reaching this decision since purchasers of golf club memberships are required, by the economic coercion inherent in the defendants' initiation fee arrangement, to buy a lot from the defendants, even though they "might have preferred to purchase elsewhere on different terms." Jefferson Parish Hospital District No. 2 v. Hyde, supra, 466 U.S. at ----, 104 S.Ct. at 1558.
 
 
 46
 In reviewing the district court's decision to dismiss the Association's antitrust action for failure to state a claim, we are governed by the following standards:
 
 
 47
 [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
 
 
 48
 * * *
 
 
 49
 * * *
 
 
 50
 [A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. Nor should a complaint be dismissed that does not state with precision all elements that give rise to a legal basis for recovery. Finally, a complaint should not be dismissed merely because the court doubts that a plaintiff will prevail in the action. That determination is properly made on the basis of proof and not merely on the pleadings.
 
 
 51
 The question, therefore, is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief.
 
 
 52
 Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784, 787 (8th Cir.1979) (emphasis added) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir.1978), cert. denied, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979)). After considering the district court's decision in light of these standards, we conclude that the court erred in dismissing the Association's antitrust claim.
 
 
 53
 The district court's determination that the Association failed to state a cognizable antitrust claim can be explained as being based, in part, on the fact that the factual allegations made by the Association in this case do not mirror the facts underlying the traditional tying case. In contrast to the traditional tying arrangement, there is no "sale" of the tying product (club memberships) to allegedly coerced buyers here, since the tying product is offered free of charge to such buyers. See Brown Shoe Co. v. Federal Trade Commission, 339 F.2d 45, 53, 54 (8th Cir.1964), rev'd, 384 U.S. 316, 86 S.Ct. 1501, 16 L.Ed.2d 587 (1966). Further, this no cost feature of the tying product is the chief attraction of the tying product which allegedly provides the leverage for sales of the tied product (defendants' subdivision lots). Traditional tying arrangements, in contrast, rely on the desirability or dominant market position of the tying product to coerce sales of the tied product. See generally Jefferson Parish Hospital District No. 2 v. Hyde, supra, 466 U.S. at ----, 104 S.Ct. at 1560-61.
 
 
 54
 Yet the evil which is allegedly generated by the defendants' initiation fee arrangement is the same as that generated by traditional unlawful tying arrangements--competition in the market for one product is restrained due to the seller's exploitation of its control over another product. See id. at ----, 104 S.Ct. at 1558-59. Thus, even though a proper tying claim was not alleged in the Association's complaint, the factual allegations made in the complaint may support a conclusion that the defendants' initiation fee arrangement constitutes an unreasonable "restraint of trade", 15 U.S.C. Sec. 1, in violation of the antitrust laws, with the Association's tying argument serving only as an analogy for analyzing the lawfulness of the defendants' initiation fee arrangement. See Federal Trade Commission v. Brown Shoe Co., supra, 384 U.S. at 321, 86 S.Ct. at 1504 (there was no "sale" of the tying product and the chief attraction of the tying product was its no cost feature, yet the Supreme Court stated that the arrangement violated the policy of the antitrust laws and held that the arrangement was an unfair trade practice under Section 5 of the Federal Trade Commission Act); 2 R. Callmann, Unfair Competition, Trademarks and Monopolies, Sec. 10.18 at 107-08 (4th ed. 1982) (use of tying arrangement as an analogy). Accordingly, we reverse the dismissal of count sixteen of the Association's complaint.
 
 4. Pendent State Law Claims
 
 55
 Counts seven through fourteen of the Association's complaint raised various state law claims premised upon breach of contract and fraud theories. The district court dismissed these claims without prejudice. This decision was proper in this case in light of the court's early dismissal of all of the federal claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Koke v. Stifel, Nicolaus & Co., 620 F.2d 1340, 1346 (8th Cir.1980). On appeal, however, we have reversed the dismissal of two of the federal claims. Accordingly, we vacate the dismissal of the state law claims and remand so that the court may reconsider its decision whether to hear the state law claims in view of our decision on appeal.
 
 CONCLUSION
 
 56
 We affirm the dismissal of the Land Sales Act claims (counts one through six), reverse the dismissal of the RICO (count fifteen) and antitrust claims (count sixteen), vacate the dismissal of the state law claims (counts seven through fourteen), and remand for proceedings consistent with this opinion.
 
 
 
 *
 The HONORABLE WILLIAM R. COLLINSON, Senior Judge, United States District Court for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 Count two actually cited 15 U.S.C. Sec. 1703(a)(2)(D) as the statutory subsection which was violated by defendants' conduct. It is clear from the factual allegations in count two, however, that the Association intended to cite 15 U.S.C. Sec. 1703(a)(2)(B ), so we shall treat the complaint as though it cited section 1703(a)(2)(B). See FED.R.CIV.P. 8(f) ("pleadings shall be construed as to do substantial justice")
 
 
 [2]
 Count three actually cited 15 U.S.C. Sec. 1703(a)(2)(C) as the statutory subsection which was violated by defendants' conduct. It is clear from the factual allegations in count three, however, that the Association intended to cite 15 U.S.C. Sec. 1703(a)(l )(C), so we shall treat the complaint as though it cited section 1703(a)(1)(C). See FED.R.CIV.P. 8(f); supra note 1
 
 
 [3]
 On remand from the Supreme Court's vacation of our judgment in Alexander Grant we stated: "the approach of the Supreme Court [in Sedima ] but underscores our conclusion that Grant has standing to assert its claims. See Sedima, [--- U.S. at ---- n. 15, 105 S.Ct. at 3286 n. 15,]. We find nothing in our discussion in Point I of our earlier opinion, 742 F.2d at 411-12, in conflict with the opinions of the Supreme Court in either Sedima or American National [Bank & Trust Co. of Chicago v. Haroco, --- U.S. ----, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) ]; * * *." Alexander Grant & Co. v. Tiffany Industries, Inc., 770 F.2d 717, 719 (8th Cir.1985) (on remand) (footnote omitted)
 
 
 [4]
 All lot owners can join the golf and country club, regardless of who the lot was purchased from. But those who do not own a lot in the subdivision cannot join at any price. Thus, in order to join the club, a lot must be purchased from somebody