610 F.Supp. 499 (1985)
A.L. BARNES, Plaintiff,
v.
RESOURCE ROYALTIES, INC. et al., Defendants.
No. 83-1582C(5).
United States District Court, E.D. Missouri, E.D.
April 11, 1985.
*500 Timothy Vujnich, Cooper & Duggan, St. Louis, Mo., for plaintiff.
Roger M. Hibbits, Florissant, Mo., for defendants.

MEMORANDUM OPINION
LIMBAUGH, District Judge.
This matter before the Court is a securities fraud complaint. The complaint filed was originally a twenty-one count complaint naming twelve defendants. After a rather chaotic pre-trial period, several counts of the complaint were dismissed and plaintiff either settled with or default judgments were entered against ten of the defendants. Eventually, it was decided to proceed with the case against the only remaining defendants, C. Wallace McPherson and Norma J. McPherson. On November 5, 1984, this cause was tried before the Court on counts 2, 4 and 6 involving Sections 12 and 17 of the Securities Act of 1933; Count 8 involving Section 10b of the Securities Act of 1934 and Rule 10b-5; Count II involving the Racketeer Influenced and Corrupt Organization Act (RICO); and counts 13, 17 and 19 involving Section 409.411 of the Missouri Uniform Securities Act (more commonly known as Missouri blue-sky laws).
The Court has jurisdiction over the parties and has subject matter jurisdiction as to counts 2, 4, 6, 8 and 11 pursuant to 15 U.S.C. § 77v(a), 15 U.S.C. § 78aa and 18 U.S.C. § 1964(a) and (c). The Court maintains pendent jurisdiction as to counts 13, 17 and 19. Judgment will be entered for the defendants on all counts at issue.
Plaintiff, A.L. Barnes, is a resident of St. Louis County, Missouri. Defendant C. Wallace McPherson was an officer and a director of several corporate entities: McPherson Enterprises, Fearon Development Corporation, Pan-American Energy, Inc., and Resource Royalties, Inc. for the years 1980, 1981 and 1982. Defendant Norma J. McPherson, C. Wallace McPherson's wife, was an officer and a director of McPherson Enterprises and Fearon Development Corporation for the years 1980, 1981 and 1982. Essentially, plaintiff alleges that defendants and several others involved him in a fraudulent investment scheme. Plaintiff avers that he was induced to invest substantial sums of money in defendants' corporations on the pretext that these businesses were developing new products. Specifically, plaintiff claims that defendants sold him unregistered securities in sham corporations.
The testimony before this Court was basically by deposition and plaintiff Barnes in *501 person. Defendant C. Wallace McPherson invoked his rights under the Fifth Amendment and elected not to testify. The circumstances surrounding this cause of action are somewhat complicated but basically plaintiff's suit involves three securities transactions.
On or about December 1, 1980, plaintiff bought, at the suggestion and through his broker, John Darling, 10,000 shares of common stock of Knox-Arizona Corporation for a purchase price of $.25 per share, or an aggregate purchase price of $2,500. John Darling advised plaintiff to purchase this stock because defendant C. Wallace McPherson and Richard Laughlin were going to buy the company and Darling predicted that the stock value would then increase. Later in December, 1980, Darling told plaintiff about the availability of some options to purchase more stock in Knox-Arizona. On December 30, 1980, plaintiff purchased 100,000 shares of common stock of Knox-Arizona at a purchase price of $.40 per share or an aggregate purchase price of $40,000. This purchase was pursuant to a common stock option which provided that the purchase price was to be paid in two (2) installments of $20,000 each. Plaintiff authorized Darling to withdraw $20,000 from his account with the brokerage firm (Thomson-McKinnon) on January 9, 1981. Thereafter, plaintiff received through the mail a common stock option for 100,000 shares of Knox-Arizona from the Fearon Development Corporation. At this point in time, plaintiff testified that he had no knowledge of the link between defendants, Fearon Development Corporation, and Knox-Arizona. Plaintiff also testified that the transactions were handled entirely by John Darling. Plaintiff never knew who the seller of the stock was or who received his payments for the stock.
The evidence further showed that plaintiff met defendants for the first time at a stockholders' meeting on or about January 10, 1981. Plaintiff was invited to this meeting by John Darling on behalf of defendant C. Wallace McPherson. Both defendant C. Wallace McPherson and Laughlin gave speeches about the business of Fearon-Development Corporation and the need to acquire Knox-Arizona. Thereafter, plaintiff acquired a friendship with Laughlin and maintained regular contact with him.
Sometime in June, Laughlin told plaintiff that the acquisition of Knox-Arizona was not going well. Plaintiff then received a letter from defendant C. Wallace McPherson (on Fearon Development Corporation stationery) stating that instead of acquiring Knox-Arizona, Fearon Development Corporation had acquired Pan-American Energy, Inc. Shortly thereafter, defendant C. Wallace McPherson called plaintiff and told him that contrary to the prior letter, Pan-American Energy was not purchased. Instead, defendant C. Wallace McPherson and Laughlin had purchased Resource Royalties, Inc., and were going to form their own Pan American Energy, Inc. Defendant C. Wallace McPherson offered plaintiff 200,000 shares of Resource Royalties at $.20 per share in lieu of the 100,000 shares of Knox-Arizona as previously offered and sold to plaintiff pursuant to the common stock option. Plaintiff discussed the new arrangement with Darling and Laughlin and testified that Darling and Laughlin recommended that he exercise his option.
On or about July 1, 1981, Darling called plaintiff to tell him that C. Wallace McPherson was in Darling's office awaiting payment of the second $20,000 installment on the common stock option. Plaintiff stated that he again authorized Darling to withdraw $20,000 from plaintiff's account. There was no evidence that plaintiff talked to defendant C. Wallace McPherson during this conversation or in any way had contact directly with him.
Plaintiff did not immediately receive a stock certificate for the 200,000 shares of Resource Royalties and the delay caused him some concern, which he expressed to Darling and Laughlin. On or about September 10, 1981, Laughlin personally delivered to plaintiff a stock certificate representing *502 plaintiff's purchase of 200,000 shares of Resource Royalties.
The Court finds that neither the Knox-Arizona nor Resource Royalties stocks were registered as required by federal and state laws. The Court further finds that these same securities were sold without the required accompanying prospectus and no sales or advertising literature was filed with the State of Missouri prior to the sales.
The remainder of the evidence presented to the Court was primarily concerned with plaintiff's employment arrangement with defendant C. Wallace McPherson. The Court does not find that portion of the evidence to be relevant to the cause of action as it presently stands before the Court.
The evidence indicates that on the whole plaintiff became involved and continued to be involved in the "investment scheme" through the efforts of John Darling and Richard Laughlin. The Court finds that plaintiff had minimal contact with defendant C. Wallace McPherson as regards these securities transactions and virtually no contact with defendant Norma J. McPherson. Plaintiff testified that he relied upon the advice and representations made by John Darling and Richard Laughlin. The evidence shows withdrawals from plaintiff's account with Thomson-McKinnon but without any indication of purpose of the withdrawals. The Court further finds no evidence indicating the source of funds deposited into Fearon Development Corporation's bank accounts. The Court finds that plaintiff purchased his shares of Knox-Arizona through John Darling from an unknown seller. Whether the seller was defendant C. Wallace McPherson personally would be unsubstantiated speculation on the part of the Court. The Court further finds that plaintiff purchased his 200,000 shares of Resource Royalties pursuant to a common stock option issued by Fearon Development Corporation. There is no evidence that defendant C. Wallace McPherson sold these shares personally.
Firstly, plaintiff seeks to hold defendants personally liable for the sale of these securities by means of untrue statements of material fact or omissions of material fact under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 771(2). These statutes read as follows:
§ 10(b) of the Securities Exchange Act 1934, 15 U.S.C. § 78j(b), provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or the mails, or of any national securities exchange
(b) To use or employ, in connection with the purchase or sale of any security, registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. Rule 10b-5 implementing § 10(b), 17 C.F.R.
§ 240.10b-5, provides:
Employment of manipulative and deceptive devices.
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) to employ any device, scheme, or artifice to defraud,
(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

*503 § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2) provides in pertinent part:
Any person who
(2) offers or sells a security ..., by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
As to plaintiff's initial purchase of the Knox-Arizona stock, the Court finds insufficient evidence to support defendants' liability under these statutes. When plaintiff bought his shares of Knox-Arizona, he did so upon the representations of his broker John Darling. Plaintiff did not know where the stock originated for sale and apparently did not care. Plaintiff testified repeatedly that he bought the Knox-Arizona stock solely on the basis of what John Darling told him. There is no evidence to link any conduct on defendants' part with plaintiff's decision initially to purchase the Knox-Arizona stock. See, Austin v. Loftsgaarden, 675 F.2d 168, 178 (8th C 1982) citing St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 562 F.2d 1040, 1048 (8th C 1977), cert. den. 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).
Once again, upon the representations of his broker, plaintiff was induced to purchase a common stock option for 100,000 shares of Knox-Arizona. Plaintiff did not have any contact with defendants prior to his decision to buy the option. Plaintiff testified that he thought the option was offered by defendant C. Wallace McPherson, but the evidence further shows that any reason for such a conclusion was due to representations made by John Darling. In fact, the evidence shows the offeror of the option to be Fearon Development Corporation. John Darling handled the payment of the first $20,000 installment (i.e. withdrawing it from plaintiff's Thomson-McKinnon account) and plaintiff never knew who received the payment. There is insufficient evidence to connect any conduct on the part of defendants with plaintiff's decision to purchase the option and make the first $20,000 payment.
Plaintiff met the defendants for the first time on January 10, 1981 at a Fearon Development Corporation shareholder's meeting. It was at this meeting that plaintiff became aware of the connection between defendants and Fearon Development Corporation. Defendant C. Wallace McPherson spoke to the group of shareholders about the need of Fearon Development Corporation to acquire Knox-Arizona in order to market a pressure gauge that Fearon Development Corporation was developing. Plaintiff became more involved in the "investment scheme" primarily through the efforts of Richard Laughlin; however, sometime in June, 1981, plaintiff communicated directly with defendant C. Wallace McPherson. First, plaintiff received a letter, then a phone call from defendant C. Wallace McPherson outlining the present status of the proposed acquisition of Knox-Arizona by Fearon Development Corporation. He first wrote plaintiff that the Knox-Arizona deal had fallen through but that a different corporation, namely Pan-American Energy had been acquired. Shortly after receipt of the letter, defendant C. Wallace McPherson called plaintiff to tell him that Pan-American Energy had not been bought but that instead Fearon *504 Development Corporation had bought Resource Royalties and was also going to form their own Pan-American Energy Corporation. Defendant C. Wallace McPherson talked to plaintiff about exercising his option (upon payment of another $20,000) for 200,000 shares of Resource Royalties instead of Knox-Arizona. After talking the proposition over with John Darling and Richard Laughlin, plaintiff decided to exercise his option. In September, 1981, Laughlin delivered the stock certificate to plaintiff, as issued by Fearon Development Corporation.
Plaintiff contends that defendants misrepresented and omitted certain material facts concerning the exercise of plaintiff's option and subsequent purchase of Resource Royalties shares. Primarily plaintiff argues that defendants misrepresented themselves as the seller whereas Fearon Development Corporation was the actual seller, that defendants failed to disclose that the monies paid for the shares were never invested in Resource Royalties, and that defendants failed to disclose that defendant C. Wallace McPherson had been a respondent in administrative hearings in 1972 in Missouri and Oklahoma.
This Court must make two distinct findings in order to conclude that liability existed under the federal securities claim with regard to the option to purchase and subsequent purchase of the Resource Royalties shares. First, the Court must determine whether a statement or omitted fact is to be considered material, and then must decide if there is a causal connection between the defendants' conduct and plaintiff's damages. Essentially, a statement or omitted fact is considered material if it is substantially likely that a reasonable investor would consider the matter important to his/her decision in making the investment. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); Austin v. Loftsgaarden, at 176. If a misrepresented fact or omission is important depends on whether a reasonable investor would consider it "as significantly altering the total mix of information made available." TSC Industries, 426 U.S. at 449, 96 S.Ct. at 2132; Austin, at 176.
The Court finds that the alleged misrepresentations/omissions would be material to a reasonable investor, but as stated before, the Court's inquiry does not stop at this determination. Although the evidence before this Court is scant, it is clear that these misrepresentations/omissions were not crucial, in the least, to plaintiff's investment decisions. He never inquired of his broker as to who the seller of these, or any, securities was and never complained to anyone that Fearon Development Corporation was the actual seller of the shares in Resource Royalties. Plaintiff repeatedly testified that he did not care who sold the securities or even what corporate entity he was investing in; plaintiff simply wanted "a piece of the action". There is insufficient evidence to show that plaintiff either relied on these misrepresentations/omissions or that there existed in any way a causal connection between defendants' misconduct and plaintiff's purchases. See Austin, at 176; Alton Box Board Co. v. Goldman, Sachs and Co., 560 F.2d 916 (8th C 1977).
Next, plaintiff seeks to impose liability on defendants pursuant to § 409.411 R.S.Mo. Section 409.411 states in pertinent part:
(a) Any person who (1) offers or sells a security in violation of section 409.201(a), 409(301), or 409(405(b), or of any rule or order under section 409.403 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under section 409.304(d), 409.305(f), or 409.305(g), or (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission) and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the *505 untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. "Damages" is the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at eight percent per year from the date of disposition.
Although the Court found the securities in question to have been sold as unregistered securities and without an accompanying prospectus, the plaintiff has failed to bear the burden of proving by a preponderance of evidence that the defendants personally sold these securities. No evidence was presented linking defendants as the sellers of the Knox-Arizona shares and plaintiff has admitted that Fearon Development Corporation was the seller of the option to purchase and subsequent stock in Resource Royalties. Plaintiff argues that defendants are liable because they are officers and directors of Fearon Development Corporation, but defendants were sued in their individual capacity, not in a corporate capacity.
As for the RICO count, the Court will not find for the plaintiff because he has failed to prove that either or both defendants have been criminally convicted of any of the predicate acts listed in RICO. The "pattern of racketeering activity" alleged by plaintiff consists of fraudulent misrepresentations and mail fraud, yet neither of the defendants are alleged ever to have been criminally convicted of any predicate acts of mail fraud. The Eighth Circuit has left open the question of whether a determination of a prior criminal conviction is a necessary prerequisite to a civil RICO cause of action in the recent decision of Alexander Grant and Co. v. Tiffany Industries, Inc., 742 F.2d 408 (8th C 1984). Therefore, this Court has chosen to follow the well-reasoned decision of the Second Circuit in Sedima, S.P.R.L. v. Imrex Co., 741 F.2d 482 (2nd C 1984). The Second Circuit thoroughly examined the statute itself and analyzed the legislative history and previous case law, all of which, it concluded suggested that the availability of civil RICO remedies be restricted to those potential defendants who have previously been found criminally guilty of committing a predicate offense. Id. at 482-510.
The foregoing constitute findings of fact and conclusions of law as required by rule.

ORDER
IT IS HEREBY ORDERED that plaintiff A.L. Barnes as to Counts 2, 4, 6, 8, 11, 13, 17 and 19 of the complaint take nothing and that judgment be entered in favor of defendants C. Wallace McPherson and Norma J. McPherson with each party bearing their own costs and attorney's fees.
IT IS FURTHER ORDERED that defendants' joint motion for judgment on the pleadings be and is DENIED as untimely pursuant to Rules 12(c) and 56(c), Federal Rules of Civil Procedure and Local Rule 7.
IT IS FURTHER ORDERED that defendant Norma J. McPherson's motion for summary judgment be and is DENIED as untimely pursuant to Rules 12(c) and 56(c), Federal Rules of Civil Procedure and Local Rule 7.