**A.L. BARNES, Appellant,**

v.

**RESOURCE ROYALTIES, INC., Appellee.**

**No. 85-1715.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1986.

Decided June 27, 1986.

---

Timothy N. Vujnich, St. Louis, Mo., for appellant.

Roger M. Hibbits, Florissant, Mo., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The plaintiff, A.L. Barnes, appeals from the district court's judgment in favor of the defendants, C. Wallace and Norma J. McPherson, in this case involving primarily the allegedly fraudulent offer and sale of unregistered securities. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Barnes, the purchaser of several securities, initiated this action by filing a twenty-one count complaint against twelve defendants, including the McPhersons. Mr. McPherson was an officer and director of the following corporations: McPherson Enterprises, Fearon Development Corporation, Pan-American Energy Incorporated, and Resource Royalties Incorporated. Mrs. McPherson was an officer and director of McPherson Enterprises and Fearon Development. The complaint alleges a breach of employment contract, common-law fraud, a violation of the Racketeer Influenced and Corrupt Organization (RICO) Act, and several violations of federal and state securities laws.

The case involves three securities transactions and an alleged employment agreement. The first transaction occurred on December 1, 1980 when Barnes purchased, through his broker, 10,000 shares of Knox-Arizona Corporation stock at $.25 per share. The second transaction occurred on December 30, 1980 when Barnes purchased, again through his broker, an option for 100,000 shares of Knox-Arizona common stock at $.40 per share ($20,000 was paid in January, 1981 and $20,000 was paid in July, 1981). The third transaction occurred in June, 1981 when Barnes acquired 200,000 shares of Resource Royalties common stock in lieu of the 100,000 shares of Knox-Arizona as previously offered and sold pursuant to the option. The gravamen of Barnes' complaint, excluding the breach of contract claim, is that he was fraudulently induced by the defendants to purchase unregistered securities on the pretext that the corporations in which he was investing were developing and marketing new products. The breach of contract claim involves an alleged agreement between Barnes and Pan-American Energy, a wholly owned subsidiary of Resource Royalties. Barnes alleges that he and Mr. McPherson, acting on behalf of Pan-American, entered into an agreement whereby Barnes would be hired as a project manager.

After what the district court referred to as "a rather chaotic pre-trial period," the court determined that several counts of the complaint had been dismissed, and that Barnes either settled with or secured default judgments against all the defendants except the McPhersons. *Barnes v. Resource Royalties, Inc.*, 610 F.Supp. 499, 500 (E.D.Mo.1985). Accordingly, the case was tried to the court against only the McPhersons on fewer than all twenty-one counts. McPherson invoked his rights under the Fifth Amendment and chose not to testify.

The district court included the following counts in its list of those counts that were tried: 2, 4, 6, 8 (federal securities law violations), 11 (RICO violation), 13, 17, and 19 (state securities law violations). With the exception of Count 11, these counts pertain to only the second and third transactions. The court, however, addressed all three transactions in its opinion.

With respect to the first transaction, the district court found that the McPhersons were not the offerors or sellers of Knox-Arizona stock, and therefore they could not be held liable under federal or state securities law. With respect to the second transaction, the court found that Fearon Development was the offeror and seller of the option to purchase 100,000 shares of Knox-Arizona common stock. The court therefore concluded that the McPhersons could not be liable under federal or state securities law for the second transaction. With respect to the third transaction, the court found that Fearon Development also was the offeror and seller of the Resource Royalties stock. The district court also found that the evidence was insufficient to show that Barnes "either relied on [any] misrepresentations/omissions or that there existed in any way a causal connection between the defendants' misconduct and plaintiff's purchases." 610 F.Supp. at 504. The district court therefore concluded that the McPhersons were not liable under either federal or state securities law for the third transaction. The district court also held that the McPhersons could not be held lia-

ble as "controlling persons" under state law because they were not sued in their corporate capacity. Finally, the district court ruled in favor of the McPhersons on the RICO count because Barnes failed to prove that the "defendants [had] been criminally convicted of any of the predicate acts listed in RICO." *Id.* at 505.

On appeal, Barnes contends that the district court erred in trying the case on fewer than all twenty-one counts of the complaint. Barnes also takes issue with the district court's ruling on each of the transactions. We address in detail Barnes' contentions in the following discussion. Suffice it to say here that we hold that the district court erred in trying the case on fewer than all counts of the complaint. We affirm, however, the district court's decision with respect to the first transaction, and reverse and remand the court's decision concerning the second and third transactions. Finally, we reverse the district court's decision on the RICO count and remand for further consideration in light of *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), which was decided after the district court rendered its decision.

## II. DISCUSSION

■ The district court excluded the following counts from its list of those that were tried: 1, 3, 5, 7, 9, 10, 12, 14, 15, 16, 18, 20, and 21. Barnes contends that the district court erred in ruling that these counts were dismissed before trial. Barnes argues that he submitted the case against the McPhersons on all twenty-one counts. We agree. The McPhersons are named as defendants in every count. Barnes did not move to dismiss any of the counts against the McPhersons. The proposed findings of fact and conclusions of law submitted to

the district court by *both* parties address all twenty-one counts. Therefore, we remand so that the district court can rule on these counts in light of our decision.[1] Contrary to Barnes' contention, and as set forth in more detail in our discussion, the district court will not need to render findings and conclusions as to all of those counts.

### A. The first transaction

With respect to the initial purchase of the 10,000 shares of Knox-Arizona common stock, Barnes' complaint alleges violations of both federal and state securities law. Counts 1, 3, 5, 7, and 9 contain the federal law allegations; Counts 12, 14, 16, and 18 contain the state law allegations. Although the district court did not include any of these counts in its list of those that were tried, it rendered findings of fact and conclusions of law with respect to all but three (Counts 5, 9, and 14). Counts 1 and 3 allege violations of section 12(1) and (2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1982). Count 7 alleges a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982). Section 12(1) prohibits the offer or sale of securities in violation of the registration and prospectus requirements. Section 12(2) prohibits misrepresentations or omissions of material fact by "any person who offers or sells a security." In essence section 10(b) contains the same prohibition but "in connection with the purchase or sale of a security." *See* 17 C.F.R. § 240.10b–5 (1985). The district court found that Barnes purchased the initial 10,000 shares of Knox-Arizona stock through his broker "from an unknown seller. Whether the seller was defendant C. Wallace McPherson personally would be unsubstantiated speculation

1. Although we agree with Barnes, we empathize with the district court. Even plaintiff's counsel was unsure as to which counts were going to be submitted. The twenty-one count complaint is fifty-five pages long and contains 197 numbered paragraphs. Although the McPhersons were included as defendants in each count, they were grouped together with several defendants who were included in approximately one half of the counts, and several others who were included in the other half. Half of the complaint involves the first transaction and the other half involves the second and third transactions, as well as the RICO, common-law fraud, and breach of contract claims. The confusion still exists. During oral argument defendants' counsel stated that his "trial chart" indicated that only half of the counts were going to be tried.

* * * *" 610 F.Supp. at 502. The district court also found that the securities were unregistered, but concluded that the McPhersons were not liable under sections 12(1), 12(2) or 10(b) because "no evidence [existed] to link any conduct on the [McPhersons'] part with the plaintiff's decision initially to purchase the Knox-Arizona stock." *Id.* at 503.

Barnes contends that the finding that he purchased the initial 10,000 shares of stock from an unknown seller is clearly erroneous. The evidence established that Barnes purchased his shares on December 1, 1980. The McPhersons owned 26,246 shares of Knox-Arizona stock, and during the month of December they sold 16,000 shares. Two other Knox-Arizona shareholders, however, sold 40,000 and 30,000 shares during the same period. Finally, Barnes' broker, who was also one of the McPhersons' original co-defendants, testified that Knox-Arizona stock could only be purchased through McPherson.

■ Barnes argues that the only logical inference that can be drawn from this evidence is that the McPhersons were the sellers of the 10,000 shares he initially purchased. Appellant's Brief at 29. The district court did not adopt this inference in finding that the seller was "unknown," and we do not believe its finding is clearly erroneous. Other shareholders were selling their shares at that time. Although we might have reached a different conclusion had we been the trier of fact, we cannot say that we are left with a definite and firm conviction that the district court was

mistaken. *See Anderson v. City of Bessmer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Therefore, we affirm the court's decision that the evidence did not establish violations of sections 12(2) and 10(b) with respect to the first transaction. Accordingly, we also affirm the court's decision that the evidence did not establish a violation of state securities law as alleged in Counts 12, 14, 16, and 18. These counts allege several violations of Mo.Rev.Stat. § 409.411(a) (Supp.1984).[2] Section 409.411(a)(1) prohibits the offer or sale of unregistered securities, the offer or sale of securities by unregistered brokers or agents, and the offer or sale of securities without first having on file with the commissioner of securities the sales and advertising literature. Subsection (2) is in essence identical to section 12(2) of the Securities Act of 1933. Although the district court did not include these counts in the list of those that were tried, it found that the securities were unregistered and that no sales and advertising literature had been filed with the commissioner. The district court concluded, however, that because the evidence did not show that the McPhersons were the sellers of the first 10,000 shares of Knox-Arizona stock, they could not be liable under § 409.411(a). As we said, this finding is not clearly erroneous. Therefore, we also affirm the district court's decision with respect to these state law claims.

In sum, we affirm the district court's decision concerning the first transaction. On remand, the district court shall enter

---

2. Section 409.411(a) provides:

Any person who (1) offers or sells a security in violation of section 409.210(a) [registered brokers and agents], 409.301 [requires securities to be registered], * * *, or of any rule or order under section 409.403 which requires the affirmative approval of sales literature before it is used, * * *, or (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in

the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with the interest at eight percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. **"Damages"** is the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at eight percent per year from the date of disposition.

judgment in favor of the McPhersons on Counts 1, 3, 5, 7, 9, 12, 14, 16, and 18.[3]

## B. The second transaction

In his complaint, Barnes consolidates the allegations concerning the second and third transactions—the offer and sale of the option for 100,000 shares of Knox-Arizona stock and the subsequent purchase of 200,000 shares of Resource Royalties in lieu of the Knox-Arizona stock. Counts 2, 4, 6, 8, 10, 13, 15, 17, and 19 pertain to these two transactions and allege the same violations of federal and state securities law as did the counts involving the first transaction. Counts 2, 4, 6, 8, and 10 allege violations of federal law. The court rendered findings of fact and conclusions of law with respect to Counts 2, 4, and 8. Counts 2 and 4 allege violations of sections 12(1) and (2) of the 1933 Act. Count 8 alleges a violation of section 10(b) of the 1934 Act.[4]

With respect to the offer and sale of the option for 100,000 shares of Knox-Arizona stock and the first $20,000 payment, the court found that the offeror of the option was Fearon Development Corporation, not the McPhersons. The McPhersons had no personal contact with Barnes concerning the option. The court also found that Barnes did not know who received the corresponding $20,000 payment. The court concluded that the evidence was insufficient "to connect any conduct on the part of the [McPhersons] with [Barnes'] decision to purchase the option or make the first $20,000 payment." Consequently, the court did not discuss sections 12(2) and 10(b) with respect to the offer and sale of the option.

On appeal, Barnes contends that the district court overlooked the McPhersons' liability as "controlling persons." Barnes argues that as officers and directors of Fearon Development, the McPhersons are controlling persons, and therefore pursuant to sections 15 and 20 of the 1933 and 1934 Acts, they are jointly and severally liable for any federal securities law violations

---

3. As we have stated, the district court did not address the allegations concerning the first transaction in Counts 5, 9, and 14. Because we hold that the district court did not err in finding that the McPhersons were not the sellers of the initial 10,000 shares, Barnes is not entitled to recover on these counts as well.

4. Section 12 provides:
Any person who—
   (1) offers or sells a security in violation of section 77e [prohibitions relating to unregistered securities, prospectuses, and registration statements] of this title, or
   (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
   shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
15 U.S.C. § 77*l* (1982). Section 10(b) provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b) (1982). *See* 17 C.F.R. 240.10b–5 (1985).
Count 10, which alleges a violation of § 29(b) of the 1934 Act, 15 U.S.C. § 78aa(b) (1982), was not included in the district court's list of those counts that were tried. Count 6, which alleges a violation of § 17(a) of the 1933 Act, 15 U.S.C. § 77q (1982), was included in the court's list, but no findings of fact or conclusions of law were rendered with respect to this count.

committed by Fearon Development.[5] Barnes therefore contends that the McPhersons' lack of personal contact with him is irrelevant.

■ We agree with Barnes that the district court overlooked the federal controlling person issue. The district court, however, addressed state controlling person liability, but held that the McPhersons were not liable under state law because they were sued in their personal, as opposed to official, capacities. We disagree. Paragraphs 48 and 52 of Barnes' complaint adequately notified the McPhersons that they were also being sued in their official capacities as "controlling persons," and each count of the complaint incorporates these paragraphs. Accordingly, we reverse this portion of the district court's decision, and remand the issue of whether the offeror and seller of the option, Fearon Development, is liable to Barnes under federal law concerning the second transaction. If the court finds that the offeror and the seller of the option is liable under federal law, it shall then address the issue of controlling person liability under sections 15 and 20 to determine whether the McPhersons are lia-

ble. *See Metge v. Baehler,* 762 F.2d 621, 630–31 (8th Cir.1985), *cert. denied,* —— U.S. —— 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).[6] On remand, the district court also shall rule on Counts 6 and 10 with respect to the offer and sale of the option for 100,000 shares of Knox-Arizona.[7]

Counts 13, 15, 17, and 19 allege violations of state law regarding the offer and sale of the option. The district court included Counts 13, 17, and 19 in the list of those counts that were tried. These counts allege several violations of Mo.Rev.Stat. § 409.411. The district court found that the securities were not registered in violation of sections 409.411(a)(1) and 409.301. Because the district court found, however, that Fearon Development was the seller of the option, it concluded that the McPhersons were not liable. The district court noted that Barnes had argued that the McPhersons were liable as officers and directors of Fearon. The court was unpersuaded by the argument because "the defendants were sued in their individual capacity, not in a corporate capacity." Barnes argues that the district court erred in this respect. As we stated above, we

---

5. Section 15 provides:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77*o* (1982). Section 20(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

18 U.S.C. § 78t(a).

6. In *Metge,* the court approved a two-point test used in determining controlling person liability. The plaintiff must establish the following:

[F]irst, that the defendant * * * "actually participated in (*i.e. exercised* control over) the operations of the corporation in general; then he must prove that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated, but he need not prove that this later power was exercised." (emphasis in the original)

*Metge,* 762 F.2d at 631 (quoting the district court's opinion).

7. Count 6 alleges a violation of § 17(a) of the 1933 Act. Although the Supreme Court has expressed no view on the issue, *see Eichler v. Berner,* —— U.S. ——, 105 S.Ct. 2622, 2625 n. 9, 86 L.Ed.2d 215 (1985), the Eighth Circuit has held that no implied private right of action exists under section 17(a). *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 155 and 159 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Therefore, on remand the district court is directed to dismiss Count 6.

agree. The complaint adequately notifies the McPhersons that they were also being sued in their official capacities as controlling persons. Accordingly, we remand for reconsideration of the state law issues concerning the offer and sale of the option in light of the "controlling person" liability pursuant to Mo.Rev.Stat. § 409.411(b) (Supp.1984).[8]

In sum, we hold that the district court should consider controlling person liability under both federal and state law. On remand, the district court shall consider whether Fearon's conduct violated federal and state law. This will entail a reconsideration of the allegations concerning the second transaction in Counts 2, 4, 8, 10, 13, 15, 17, and 19. If Fearon is liable, the district court must consider whether the McPhersons are liable as controlling persons.

### C. The third transaction

As we stated above, the allegations concerning the third transaction—the offer and sale of 200,000 shares of Resource Royalties common stock—are consolidated in the counts containing the allegations regarding the second transaction. The district court rendered findings of fact and conclusions of law as to Counts 2 (§ 12(1)), 4 (§ 12(2)), 8 (§ 10(b)), and 13, 17, and 19 (§ 409.411). The district court found that Fearon Development was the seller of the Resource Royalties stock, and that the stock was neither registered nor sold with the required accompanying prospectus. The court also found that Mr. McPherson corresponded with Barnes by letter and phone concerning Fearon's unsuccessful attempt to acquire Knox-Arizona Corporation, as well as the other corporations, and concerning the exercise of Barnes' option for the Resource stock in lieu of the Knox-Arizona stock. Barnes alleged that the McPhersons made the following misrepresentations and omissions: (1) They misrepresented themselves as the sellers of securities; (2) they failed to disclose that the money paid for the shares was never invested in Resource Royalties; and (3) they failed to disclose that Mr. McPherson had been a respondent in administrative proceedings in Missouri and Oklahoma. *Barnes*, 610 F.Supp. at 504. The district court determined that these misrepresentations and omissions were material. The district court found, however, that the evidence was insufficient "to show that the plaintiff either relied on these misrepresentations/omissions or that there existed in any way a causal connection between the defendants' misconduct and the plaintiff's purchases. *See Austin [v. Loftsgaarden*, 675 F.2d 168, 176 (8th Cir.1982) ]; *Alton Box Board Co. v. Goldman, Sachs & Co.*, 560 F.2d 916 [, 924 (8th Cir.1977) ]." *Barnes*, 610 F.Supp. at 504.[9]

On appeal, Barnes contends that the district court erred as a matter of law with respect to section 10(b), and that its finding with respect to section 12(2) is

---

**8.** Section 409.411(b) provides:

(b) Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

**9.** Barnes contends that the district court erred in requiring a showing of reliance as an element of a § 12(2) cause of action. Barnes argues that reliance is not required in a § 12(2) action. Although Barnes' argument is correct, he misreads the district court's finding. The court referred to §§ 10(b) and 12(2) *respectively* when it found that the evidence was insufficient "to show that the plaintiff either relied [§ 10(b) ] * * * or that there existed in any way a causal connection [§ 12(2) ]." The cases on which the court relied clearly support this interpretation. *See Austin*, 675 F.2d at 176 (discussing reliance in a § 10(b) action); *Alton Box Board Co.*, 560 F.2d at 924 (court held that although reliance is not required in a § 12(2) action, some causal connection must be shown).

clearly erroneous. We agree with both contentions. Barnes correctly argues that because his section 10(b) cause of action involves primarily a failure to disclose, he was not required to show reliance. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). In a case "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material * * * * " *Id.* Because the district court found that the omissions were material, Barnes is entitled to a presumption of reliance. The presumption, however, is rebuttable. *See St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner, & Smith,* 562 F.2d 1040, 1049 (8th Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978). Although the district court discussed some rebuttable evidence, its discussion only addressed the misrepresentation that the McPhersons were the sellers. That evidence did not address the alleged failure to disclose that the money Barnes paid for his Resource Royalties shares was never invested in Resource Royalties and never used to develop new products. That evidence also did not address the McPhersons' failure to disclose that Mr. McPherson was a respondent in previous administrative hearings held in other states. Although we agree with the district court that the evidence indicated that Barnes "wanted a piece of the action," the evidence also established that Barnes invested his money on the premise that it would be used by the corporations to develop new products. The failure to disclose that the money was not invested in these corporations, and therefore not used by them to develop new products, is sufficient to raise the presumption of reliance. We also believe that the evidence is sufficient to establish the requisite causal connection under section 12(2). Therefore, we remand for reconsideration the allegations in Counts 4 and 8 concerning the offer and sale of the Resource Royalties stock. On remand, the McPhersons shall be given the opportunity to rebut the section 10(b) presumption of reliance.

The district court shall consider whether Barnes has proved the other elements of the sections 10(b) and 12(2) claims. On remand, the district court also shall consider the other federal and state law allegations concerning the offer and sale of the Resource stock in light of our discussion in Part II B of this opinion.

### D. RICO claim

Count 11 contains the RICO allegations. Barnes alleged that the defendants violated the RICO Act when on three separate occasions the defendants fraudulently sold or offered to sell securities to him. This conduct is defined as "racketeering activity" in 18 U.S.C.A. § 1961(1)(D) (Supp.1985). The district court found that Barnes "failed to prove that * * * [the] defendants [had] been criminally convicted of any of the predicate acts listed in RICO." The district court therefore concluded that Barnes could not prevail on the RICO claim. The district court understandably relied on *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482, 503 (2d Cir.1984), in which the Second Circuit held that a criminal conviction of a predicate act is a prerequisite to recovery in a private action under RICO.

Subsequent to the district court's decision, the Supreme Court reversed the Second Circuit's decision in *Sedima,* holding that no criminal conviction requirement exists in a private civil RICO action. *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985). *See also Terre DuLac Association v. Terre DuLac, Inc.,* 772 F.2d 467, 472 (8th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 1460, 89 L.Ed.2d 718 (1986). To state a claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima,* 105 S.Ct. at 3285 (footnote omitted). We hold that Barnes' complaint adequately alleged each of these elements, and therefore he has stated a claim for relief. Consequently, we reverse the district court's decision and remand the RICO issue so that the

court can render findings of fact and conclusions of law.

### E. Common Law Fraud and Breach of Contract

Barnes argues that the district court erred in failing to rule on the allegations of common law fraud and breach of employment contract in Counts 20 and 21. We agree. On remand, the district court shall render findings of fact and conclusions of law concerning these counts.

## III. CONCLUSION

In conclusion, the district court erred in trying the case against the McPhersons on fewer than all twenty-one counts of the complaint. On remand, the district court will rule on the counts that it did not address at trial. We affirm the district court's decision with respect to the first transaction. The district court's finding that the McPhersons were not the sellers of the 10,000 shares of Knox-Arizona stock is not clearly erroneous. Consequently, Barnes is not entitled to recover on those counts concerning this transaction. We reverse and remand the district court's decision concerning the second transaction. The district court failed to consider "controlling person" liability under both federal and state law. We also reverse and remand the district court's decision concerning the third transaction. The case primarily involves a failure to disclose. Therefore, reliance can be presumed under section 10(b). On remand, the McPhersons shall be given the opportunity to rebut the presumption. The evidence also demonstrates the requisite causal connection under section 12(2). The district court shall reconsider whether the McPhersons are liable under federal and state securities law for the third transaction. We also reverse and remand the district court's decision concerning the RICO claim. Finally, on remand the district court shall also rule on Counts 20 and 21.

Usual court costs assessed against appellees. (Does not include attorney fees)